## Parr *versus* Bankhart and Others.

1. E. R. was the owner in fee of lands purchased by him after his marriage and during the life of his wife. He died intestate, leaving but one child, a son, to whom the land descended and who died, in the year 1852, intestate, unmarried, and without issue, but leaving two *paternal* aunts, and the children of paternal uncles and of an aunt, who had died previous to the death of the son; and also leaving two *maternal* uncles:

It was *Held*, that the aunts on the father's side were entitled to the inheritance in preference to *the children* of the paternal uncles and aunt, and also in preference to the uncles on the *mother's* side; the latter being excluded by the 9th section of the Intestate Act of 1833, as not being *of the blood of the purchaser*.

2. *The children* of the deceased paternal uncles and aunt were excluded from a share in the inheritance by the 8th section of the Act of 1833, which provides "That there shall be no representation admitted amongst collaterals after brothers' and sisters' children," and the surviving aunts, being also one degree nearer of kin to the son of E. R. than the children of his deceased uncles and aunt.

3. E. R. the father, was the perquisitor whose blood determines the inheritance. Though he acquired the estate after his marriage, and the industry and economy of his wife may have contributed to its acquisition, the marriage was a gift of these to her husband and their fruits enured to his benefit.

ERROR to the Common Pleas of *Westmoreland county*.

This was an action of ejectment in the names of Jacob Bankhart and Rosanah his wife, for the use of said Rosanah; Robert S. Robinson, Isaac M. Robinson by his committee John Larimer, Sarah Robinson, Rebecca Robinson, John W. Robinson and Matthew Robinson, George Plumer, Jesse Grier and Jane his wife, for the use of said Jane; Jesse Sill and Elizabeth his wife, for the use of said Elizabeth; Abraham Gray and Ruth his wife, for the use of said Ruth, *v.* James B. Parr.

A case was stated in the nature of a special verdict, for the opinion of the Court. It was as follows:—

Ephraim A. Robinson, who was intermarried with Elizabeth Parr in 1816, died intestate in the year 1845; his wife Elizabeth Parr having died in the year 1828. Ephraim A. Robinson left issue but one child, named James B. P. Robinson, and he left a widow, named Jane, formerly Jane Speer, who was his third wife. *James B. P. Robinson* was the issue of the bodies of Ephraim A. Robinson and Elizabeth Parr, his first wife.

Ephraim A. Robinson, at the time of (his) death, was the owner in fee of the lands for which this suit is brought; having purchased them after his intermarriage with Elizabeth Parr, and before her death. At his death, the lands for which this suit is brought, descended to his only child, James B. P. Robinson; subject to the interest perhaps which his widow, Jane Speer, had in them under the intestate laws.

[Parr *v.* Bankhart.]

*James B. P. Robinson* died intestate, unmarried and without issue in the year 1852, seised in fee of these lands, leaving neither father nor mother, brothers or sisters; but leaving two *paternal* aunts, Ruth Gray and Elizabeth Sill, two of the plaintiffs; the other plaintiffs are the children of *paternal* uncles and a *paternal* aunt, who were deceased prior to the death of *James B. P. Robinson.*

The defendant, James B. Parr and Isaac Parr, who resides in the state of Ohio, are the only *maternal* uncles and next of kin on the mother's side, to the said intestate, James B. P. Robinson deceased.

If the Court be of the opinion that the plaintiffs, or any of them, are entitled to recover the whole of the lands described in this suit, then judgment to be rendered accordingly.

But if the Court be of the opinion that the plaintiffs, or any of them, are only entitled to recover a part of the lands described in this suit, then judgment to be rendered for such of them as may be entitled to recover, for the quantity they are entitled *to* recover; and for the residue, judgment to be rendered for the defendant. If none of the plaintiffs are entitled to recover any portion of the lands described, then judgment to be rendered for the defendant.

If the plaintiffs recover more than *four-sixths* of the lands described, the costs to be paid equally by the plaintiffs and the defendant. Should the plaintiffs recover not more than *four-sixths*, then the plaintiffs to pay all the costs, and such judgment to be rendered as will secure their payment according to the above agreement.

The right to sue out a writ of error was reserved.

In the *seventh* section of the Intestate Act of 8th April, 1833, it is provided, viz.: "In default of all persons hereinbefore described, the real and personal estate of the intestate shall descend to and be distributed among *the next of kin* to such intestate."

Sec. 8. "Provided, That there shall be no representation admitted amongst collaterals after brothers' and sisters' children."

Sec. 9. "Provided also, That no person who is not of the blood of the ancestors or other relations from whom any real estate descended, or by whom it was given or devised to the intestate, shall, in any of the cases before mentioned, take any estate of inheritance therein; but such real estate, subject to such life estate as may be in existence by virtue of this Act, shall pass to and vest in such other persons as would be entitled by this Act, if the persons not of the blood of such ancestor or other relation had never existed, or were dead at the decease of the intestate."

[Parr v. Bankhart.]

The opinion of AGNEW, President Judge, was as follows :—

"This is a controversy between the paternal aunts and issues of paternal aunts and uncles, on the one side, and the maternal uncles on the other; the estate having descended from the *paternal* side. Two questions are raised. *First*. Whether the 9th section of the intestate law confines the inheritance to the paternal line of kindred, as being of the only inheritable blood through which the estate came; or whether the 11th section extends it to all the next of kin, without distinction of blood. *Second*. If confined to the paternal line, can the issue of deceased uncles and aunts inherit along with the surviving aunts.

"It is argued for the maternal relatives, that the 9th section applies only to 'the cases before mentioned' in the preceding sections; and therefore does not control the cases in those which follow, and consequently that the 11th section extends the descent to the next of kin without distinction of blood. This argument would be conclusive had there been no provision for the next of kin previous to the 9th section; but the 7th section which precedes the 9th, and is one of 'the cases before mentioned,' provides that in default of all persons before described, to wit, lineal issue and brothers and sisters and their lineal issue, the estate shall descend to *the next of kin*. If the construction of the 11th section asked by the maternal relatives be right, it follows that the 7th, as qualified by the 9th section and the 11th section, flatly contradict each other.

"But it cannot be supposed, in a bill drawn by the revisers with so much accuracy and care, as will be observed by reading their accompanying report (*Hood on Executors* 506, &c.), and passed by the legislature without alteration, such a blunder could have been made. We must, therefore, look to see whether these sections are reconcilable and traceable to distinct classes of cases, intended to be provided for. We think they are.

"When the reviewers had finished the 7th section, they had provided for all cases where known kindred in either line existed, and the estate could not escheat. But when they followed the 7th by the 9th as a proviso, they undid the generality of the former, by the restriction of the latter. Consequently, as soon as the stock of kindred to whom the ancestral blood belonged, became extinct, the estate must escheat, notwithstanding there was another line of blood still living. Accordingly, to provide against this, the 10th section gave the estate in fee to the surviving husband or wife, to whom it might well be supposed the intestate would desire that it should descend, on the extinction of the line of ancestors from whom it came. Then follows the 11th section, which, in default of husband or wife, vests it in the next of kin, without respect of blood; and at the same time provides for any misconstruction of the rule

of computation of kindred, or the persons who are to inherit, by expressly excluding the common law heir. By this means the finality of the 7th section, which was opened by the proviso of the 9th to exclude a particular line, is again closed by the 11th, which readmits the excluded line, to save the escheat. This is made more manifest by being followed by the 12th section, providing for the escheat. Thus it will be seen that the 9th operates on one class, to whom as having the ancestral blood it may be supposed the intestate would have given it, and the 11th can operate on another to whom he would have given it rather than to the public.

"The counsel of defendants, the maternal uncles, allege that Maffit *v.* Clark, 6 *W. & Ser.* 258, is decided on the ground that the mother is not of the blood; and being excluded on that ground as one of "the before-mentioned cases" referred to in the 9th section, the case does not affect the construction they put on the 11th. This may be true of the immediate point decided. But there is an aspect in which Maffit *v.* Clark bears on the question. The mother of the intestate being excluded by the 9th section from want of inheritable blood, is it likely the revisers intended that her brothers and sisters should take, though she could not, and their kindred to the intestate could only be traced through her? Yet this will be the construction demanded by defendants' counsel. James B. Parr and Isaac Parr, the maternal uncles, were brothers of the intestate's mother. Now suppose the mother had survived, would the inheritance have passed by her and vested in them, though they were obliged to trace kindred to the intestate through her? The reason which in Maffit *v.* Clark caused it to pass her, must cause it to pass them also. It would be monstrous to suppose that, she being alive, her brothers and sisters should be preferred before her as to her own son's estate.

"Baker *v.* Chalfant, 5 *Whart.* 477, is cited by the defendants' counsel. The comprehensive reasoning of the Chief Justice, who seldom descended into particulars, seems to impugn the operation of the rule excluding for want of inheritable blood. But a close examination of the case proves the reverse, and shows that the Court held to the rule of the proviso in the only part of the case to which it could be applied. That case was a conflict between the paternal uncles and the half-sisters of the intestate. Twenty-five acres the intestate purchased, and one hundred and ten acres he inherited from his brother of the whole blood who had purchased it, and ninety acres he acquired by inheritance of one-half from his father, and by purchase of the other half from his brother. The judgment of the Court gave all to the half-sisters, except the one-half of the ninety acres descended to him from his father, which was given to the paternal uncles. The argument of counsel is not given, but it is clear that the controversy was

[Parr *v.* Bankhart.]

whether the one hundred and ten acres descending from the brother of the whole blood to the intestate, should go to the paternal uncles, or to the half-sisters of the brother from whom they came. The reasoning of the Chief Justice is intended to show, that there was no reason why the half-sisters should not inherit the estate descending from the brother of the intestate, rather than that acquired by purchase; because they were related in equal degree to both, and could as properly inherit from the first brother, who was a purchaser, after descent cast from him, as they could from the second. But, by awarding to the uncles the half of the tract which came to the intestate by inheritance from his father, the Court emphatically recognises the rule of inheritable blood, when the estate comes from an *ancestor*, who left relatives still surviving, nearer of kin to *him* than the half-sisters of the intestate, who are not of kin to him at all. In this way did Justice HUSTON understand Baker *v.* Chalfant, in Maffit *v.* Clark, 6 *W. & Ser.* 262.

"As to the *second question*, it is sufficient to say, that the issue of deceased paternal aunts and uncles are excluded by the express words of the 8th section, that there shall be no representation admitted amongst collaterals after brothers' and sisters' children: see Good *v.* Herr, 7 *W. & Ser.* 256; also *Hood on Executors* 509, Report of Commissioners. Besides, they are not the next of kin according to the 7th section, the surviving aunts being one degree of kin nearer to the intestate than the children of uncles and aunts.

"The Court therefore give judgment in the case stated, in favor of Jesse Sill and Elizabeth his wife, and Abraham Gray and Ruth his wife, for the whole premises, to wit: one undivided half in right of said Elizabeth, the other undivided half in right of the said Ruth, and that the costs be paid according to the agreement, to wit, one-half by the plaintiffs and the other half by the defendant. Judgment as of September 3, 1853."

It was assigned for error, that the Court erred in rendering judgment on the case stated in favor of Jesse Sill and Elizabeth his wife, and Abraham Gray and Ruth his wife, for the *whole* premises; that the judgment of the Court should have been for the said Sill and wife, and the said Gray and wife, for the one undivided half part thereof.

*Laird* and *White*, for plaintiffs in error.—It was contended in an elaborate argument, that the defendant, standing on the maternal side in the same degree of consanguinity with the plaintiffs on the paternal side to the intestate, was not excluded from a share in the inheritance by virtue of the proviso in the 9th section of the Intestate Act of 8th April, 1833; that the proviso in that

[Parr *v.* Bankhart.]

section did not apply to the case of the plaintiff in error, defendant below, but that he was entitled to the one fourth part, and his brother to another fourth part of the lands in question, under the provisions of the 7th and 11th sections of the Act of 1833, as being *of the next of kin.*

It was, *inter alia,* said that the rule giving ancestral estates, on the failure of *lineal* descendants, to the collateral relatives who were of the blood of the first purchaser, rested on feudal principles, and that the reason for it did not exist in this country, except so far as it was founded on natural justice; and, in this case, to adhere to it would be to contravene the sentiment of natural justice. That the estate in question was neither strictly *ex paterna* nor *ex materna;* that it was acquired by Ephraim A. Robinson, after his intermarriage with Elizabeth Parr, and was the accumulation of their joint labor, industry, and economy. The *legal* title was in E. A. Robinson, but, it was said, that when an equitable reason is invoked to justify a particular construction of a doubtful statute, it should be broadly equitable in view of all the circumstances.

But apart from the construction of the Act of 1833, contended for, it was submitted, whether Ruth Gray and Elizabeth Sill were of the blood of Ephraim A. Robinson, the perquisitor.

To be *of the blood,* is said in *Blackstone,* p. 221, vol. 1, to be *lineally descended* from the first *feudatory or purchaser,* and if a vassal died seised of a feud of his own acquiring, "it could not descend to any but his own offspring, not even to his brother, because he was not descended or derived his blood from the first acquirer." It is true that a fiction was afterwards invented to let in the collateral kinsmen upon the presumption that the *feud* had descended from some imaginary purchasing ancestor of indefinite antiquity. But when the proviso in the 9th section requires the person claiming to be of the blood of the ancestor or other relation from whom the estate descended, must he not be of his *blood* in the common law sense, that is, lineally descended from the purchaser; and is not the statutory *ancestor* or other *relation* identical with the *real perquisitor,* to wit, E. A. Robinson? This would seem to be the position assumed by the Court in Hart's Appeal, 8 *Barr* 37, and Lewis *v.* Gorman, 5 *Barr* 165. If the statutory *ancestor* is identical with the *real purchaser,* then it would follow that the plaintiffs are not of the inheritable blood of E. A. Robinson in the common law sense, and can only claim a share of this estate along with the maternal uncles as being of the next of kin.

*Foster,* for defendants in error.—He relied on the opinion of Judge AGNEW, citing Maffit *v.* Clark, 6 *W. & Ser.* 258, Hart's Appeal, 8 *Barr* 32, and Lewis *v.* Gorman, 5 *Barr* 165.

[Parr *v*. Bankhart.]

The opinion of the Court was delivered by

WOODWARD, J.—We have carefully considered the objections urged against the opinion of Judge AGNEW, and they have failed to convince us that he fell into any error.

The principle very successfully asserted in Bevan *v*. Taylor, 7 *Ser. & R.* 397, is fully incorporated into our Intestate Act of 1833, and rules the present question. The 7th section of the Act admits the next of kin to the inheritance in default of the classes and persons previously described, but its words are limited by the second proviso, to such next of kin as are of *the blood of the ancestor from whom the estate descended.* But if there should be no next of kin of *such blood,* then by the 11th section, the next of kin shall be admitted without regard to the blood of the ancestor. A general principle conformable to the common law and the dictates of nature, is laid down in the proviso to the 7th section; but where it cannot be applied, the *11th section* brings in another beneficent principle, that kindred of the intestate, without common blood with the ancestor, shall take the estate rather than that it shall escheat. Thus understood, there is no conflict between these sections, and they are as reasonable as harmonious; but they exclude the defendant, not because he is not next of kin to the intestate, but because there are others next of kin who are of the blood of the ancestor.

And there can be no question here that Ephraim A. Robinson was the perquisitor whose *blood* must determine the inheritance. It is true he acquired the estate after his marriage with Elizabeth Parr, and it may be true, as suggested, that her industry and economy contributed to its acquisition; but the marriage was a gift of these to her husband, and their fruits enure to his benefit. And he acquired it *by purchase,* in the ordinary sense of that word; so that he comes within the rule in Hartman's Estate, 4 *Rawle* 39, and Lewis *v*. Gorman, 5 *Barr* 166. The plaintiffs have blood in common with him, no matter how little: Eames *v*. Brown, *Law Reg.* No. 10, p. 634, and the defendant has none. He cannot, therefore, take.

The second point ruled by the Court is in accordance with the letter of the Act, and the adjudged cases.

The judgment is affirmed.