## Montgomery *versus* Petriken.

Where a testator devised one-third of a tract of land to his son J., in fee, one other third to his son R., in fee, and the remaining third to his son W., and, "at the death of the said W., his share to be equally divided between J. and R., with this provision, in case the said W. should ever recover from the malady under which he now labours, then he is to hold all the property devised to him for his own benefit and disposal." W. was insane at the death of his father, and died without having recovered from the malady: during his lifetime J. and R. made an amicable partition of the land between them, and each occupied his part under the partition in severalty. J. died, leaving issue a child, which died shortly afterwards. The other surviving brothers and sister brought ejectment to recover their proportion of the *whole* land as heirs of the deceased child of J. It was *Held*—

1st. That the devise over to R. and J., after the death of W., was in form and substance a vested remainder.

2d. That the estate to arise in case W. should become sane, was by way of a conditional limitation on the fee previously granted.

3d. That a partition by R. and J., in the lifetime of W., was valid and binding, and the heirs of J.'s heir can only claim their share of the part allotted to J. in the partition.

4th. The intestate having derived her title by devise from her grandfather, and by descent from her father, her heirs are her next of kin on her father's side.

5th. That the brothers and sister of the father were entitled to take in exclusion of cousins of the intestate.

ERROR to the Common Pleas of *Lycoming county*.

This was an action of ejectment brought by William A. Petriken and Margaret his wife, and Hugh Montgomery, against Robert Montgomery, Peter Sheddy, and Moses Covert, to recover 696 acres of land in Clinton township. The land in dispute formerly belonged to John Montgomery, who died in 1836, having devised the land in dispute one-third to his son Robert in fee, one-third to his son James likewise in fee, and the remaining one-third to his son William, and "at the death of said William his share to be equally divided between Robert and James, with this provision, in case the said William should ever recover from the present malady under which he now labours, then he is to hold all the property devised to him for his own benefit and disposal." William at the death of his father was insane, and died in 1839, having never recovered from that malady. During his lifetime, on the 23d of May, 1837, Robert and James made an amicable partition of the land between themselves, and each took possession of their respective purparts. Robert erected valuable improvements on his part of the premises, with the knowledge of the plaintiffs, and had the quiet possession of it up to the time of the trial.

[Montgomery v. Petriken.]

James Montgomery died in 1837, leaving issue one daughter and a widow. The child died in April, 1838, and the widow afterwards was married to Moses Chamberlin.

The heirs of John Montgomery, the testator at the time of trial, were Robert, Hugh, John (who conveyed his interest to Robert), Margaret, wife of William A. Petriken, and four children of Eleanor, wife of Joshua Bowman, who died in 1836, previous to her father's death.

The plaintiffs claimed to recover 22–75ths of the land. The defendants claimed under the partition between Robert and James.

The facts were agreed upon in the nature of a special verdict; and after argument the court entered judgment in favour of the plaintiffs for 22–75ths of the land. JORDAN, P. J., after stating the facts, delivered the following opinion:—

"The intention of the testator is to govern in all cases, where that intention can be gathered from the will. There can be but little doubt as to the testator's intention in this case. He wished his son William to have the estate devised to him during his natural life, and his two sons Robert and James to enjoy it after William's death. But, in the testator's mind, there was a possibility that the malady under which William was then labouring might be removed, and in that event it was the testator's desire that this afflicted son should have the same estate in the portion devised to him, as Robert and James were to have in the portions devised to them. An event, however, occurred, not anticipated by the testator—the death of his son James in the lifetime of William.

"What was the estate James and Robert had in the land devised to William? The defendants contend they had a vested remainder, which might be transferred by them, aliened, and enlarged, much in the same manner as an estate in possession. If this is a vested remainder in James and Robert, this position would be correct (*Cruise's Dig.* 2 vol. page 263, § 8); and having the power to alien, there does not appear to be any good reason why they might not make an amicable partition. A person entitled to a vested remainder, has an immediate fixed right of future enjoyment, an estate *in presenti*, that is only to take effect in possession and permanency of profits at a future period: same book, § 9.

"A vested remainder, or a remainder executed, is one by which a present interest passes to the remainder-man, to be enjoyed in future, and by which the estate is invariably fixed to remain to a determinate person, after the particular estate is spent. Thus, as if A. be tenant for years, remainder to B. in fee; B.'s remainder is vested, which nothing can defeat or set aside. Apply this definition, which we find in all the elementary treatises on the subject, to the case in hand. The restoration of William to health, or

[*Montgomery v. Petriken.*]

recovery from the malady under which he was labouring, would have at once defeated the remainder to James and Robert. The particular estate, by which the remainder is supported, is a conditional life estate, which upon the happening of the condition would be enlarged into a fee simple estate. In Waddel *v.* Rattew, 5 *R.* 231, the devise was in these words, 'I give, devise, and bequeath to my son Aaron the messuage, plantation, and tract of land where my son John now lives in Middleton township, containing about 119 acres, more or less with the appurtenances, to hold to him my said son Aaron during the term of his natural life, and if he shall hereafter have issue of his body begotten, then to hold to him, his heirs and assigns for ever; but in case he shall die without leaving such issue, then I give and devise the same to all the rest of my children, their heirs and assigns, as tenants in common for ever.' A. suffered a common recovery, and had issue who died during his life. It was held by the Supreme Court that the ulterior limitation was a contingent remainder.

"The event upon which Robert and James were to enjoy the land in fee was a dubious and uncertain event—the non-recovery of William from his affliction. The particular estate, by which the remainder over was supported, might chance to be determined, and thus the remainder over never take effect. The Court being of opinion that the estate devised to James and Robert, in the land devised to William, was not a vested remainder or a remainder executed, the partition agreement and possession taken in the lifetime of William was of no validity, and could not confer on the parties to it a title that can prevail over the title of plaintiffs. Direct judgment to be entered on the special verdict in favour of the plaintiffs for the undivided 22–75th parts of the land in dispute."

*Johnson* and *Maynard,* for plaintiffs in error.

*Scates* and *Miller,* for defendants in error.

The opinion of the court was delivered by

LOWRIE, J.—The devise over to Robert and James after the death of William is in form a vested remainder, and we think it is so in substance. The estate is really granted to William for life, with remainder in fee to Robert and James, and it is only on condition that William shall recover his sanity that he is to have a fee, and then it is to be by defeating the fee previously granted to the others. Their fee is vested subject to be defeated if ever the event contemplated should happen. The estate to arise in case William should become sane, was by way of a conditional limitation on the fee previously granted, as may be fully seen in *Smith on Ex. Inte·*

[Montgomery v. Petriken.]

*rests*, §§ 148–157 and 170–195, being the same book referred to by counsel as 2 *Fearne*. If the devise had been to William for life, with remainder in fee if he should ever become sane, a reversion would have remained vested in the heirs of the devisor, and a devise of it would very plainly be a vested remainder.

Then there was nothing to prevent Robert and James from binding themselves and their heirs by a contract of partition, and consequently the heirs of James's heir must be satisfied to take their share out of the part allotted to James in the partition. Robert is entitled to hold the other half in severalty.

The intestate having derived her title by devise from her grandfather and by descent from her father, her heirs, after her mother's life estate, are her next of kin on her father's side, that is to say, her father's brothers and sister. Cousins are not next of kin so long as there are any uncles or aunts (unless they have been made so by the Act of 1855): 3 *W. & S.* 353.

It seems to us, therefore, that each of these plaintiffs became entitled to one undivided fourth of what had been James's divided half, after the death of James's daughter and of William, but the special verdict is not stated with sufficient accuracy to enable us to decide as to the quantity.

Judgment reversed and new trial awarded.