| 52 | 225 |
| 205 | [1]605 |
| 52 | 225 |
| 209 | [3]107 |

# Dresher *et al. versus* Allentown Water Company *et al.*

1. The effect of a decree in partition in the Orphans' Court is to divide what descends to the heirs, not to transfer the title from the decedent to his heir.

2. Partition operates only upon the parties to it, who are the heirs : the creditors are no parties.

3. The adjudication is no more than that he to whom the land is adjudged shall hold it in severalty, and assures to him nothing but the title of his co-heirs.

4. The jurisdiction of the Orphans' Court over the settlement of a decedent's estate, cannot be ousted or diminished by partition.

5. Therefore, if after the land of a decedent has been adjudged to one of the heirs, it is sold by order of the Orphans' Court for the payment of the decedent's debts, the title of the purchaser will prevail against that of the heir.

ERROR to the Court of Common Pleas of *Lehigh county*.

This was an action of ejectment, commenced August 6th 1862, by Nathan Dresher and Lesher Trexler against The Allentown Water Company, John Blank, Joseph Weaver and Lena Grim, for a tract of land formerly the estate of which Abraham Worman, Sr., died seised.

The decedent left no widow, but left two children and two grandchildren, children of a deceased child.

On the 24th of November 1846, letters of administration on his estate were issued, and on the 5th of February 1847, on the petition of Abraham Worman, Jr., the eldest son of the deceased, proceedings in partition were commenced, under which all the real estate of the decedent, December 3d 1847, was adjudged at $6827.49 to Abraham Worman, Jr., who entered into recognisance, &c.

On the 4th of February 1848, the court directed a credit to be entered on the recognisance for $3407.97, the amount of debts of decedent paid by A. Worman, Jr.

The records showed also that he had paid the shares of all the heirs in the valuation. On the 13th of May 1848, A. Worman, Jr., conveyed an undivided moiety of the land to Peter Huber.

On the 12th of June 1848, judgments were obtained against A. Worman, Jr., and Peter Huber, under which the land in dispute was sold October 17th 1850, by the sheriff to the plaintiffs:

Prior to this sale, A. Worman, Jr., on his own application was subrogated to the rights of the creditors of his father, whose claims he had paid. On the 21st of September 1848,—after the judgments and before the sheriff's sale,—on the petition of the administrator of A. Worman, Sr., the Orphans' Court ordered his real estate to be sold for the payment of his debts : the sale was confirmed February 5th 1849. The defendants derive their title from the purchasers at the Orphans' Court sale.

2 P. F. SMITH—15

[Dresher *v.* Allentown Water Co.]

On the distribution of the proceeds of sale amongst the creditors, a dividend on $1044.54 was awarded to A. Worman, Jr., under the subrogation above mentioned.

The plaintiffs' counsel requested the court to charge the jury,

1. The proceedings in partition operated to vest in Abraham Worman, Jr., an absolute fee-simple title to the lands accepted, from the date of the execution of the recognisance.

2. The premises in controversy were vested in fee in Abraham Worman, Jr., and Peter Huber, as tenants in common on the 12th day of June 1848, and were therefore subject to the lien of the judgments recovered on that day by Nathan Dresher and Joseph Miller.

3. The sheriff's sale and deed to the plaintiffs vested in them all the estate and interest of Huber and Worman in the lands conveyed at the rendition of said judgment.

4. The Orphans' Court, by their decree adjudging the land in controversy to Abraham Worman, Jr., exhausted their authority and jurisdiction over said land as the estate of Abraham Worman, Sr., and had no power so long as that decree remained unreversed to order the land to be sold for the payment of the debts of Abraham Worman, Sr., and therefore the order of sale granted to the administrator on the 21st September 1848, and the proceedings thereunder were void, and passed no title to the premises.

5. Under all the testimony the plaintiffs have shown a good title to the premises in dispute, and are entitled to a verdict.

The court (Maynard, P. J.) instructed the jury to find for the defendants.

The errors assigned were :—

That the court erred in instructing the jury that their verdict must be in favour of the defendants; and in not affirming all the plaintiff's points.

*R. E. Wright* and *H. Green*, for plaintiffs in error.—The proceedings in partition were all regular, and the final decree fixed the *status* of the land. It bound all the world as well as the parties and privies. From the adjudication it was no longer the land of A. Worman, Sr. The judgments against A. Worman, Jr., and P: Huber bound their interest in the land: Dougan *v.* Blocher, 12 Harris 30.

Creditors within five years of the decedent's death could have recovered judgments and sold this land under them, but the Orphans' Court had no further jurisdiction with regard to them: Act of March 29th 1832, Pamph. L. 203; Act of April 22d 1856, § 10, Pamph. L. 534. The statutory proceedings are a record method of assuring the title, and are conclusive: Merklein *v.* Trapnell, 10 Casey 42; McPherson *v.* Cunliff, 11 S. & R. 422; Herr *v.* Herr,

[Dresher v. Allentown Water Co.]

5 Barr 428; Painter v. Henderson, 7 Id. 48; Lockhart v. John, 7 Id. 138; Snevily v. Wagner, 8 Id. 396; Lair v. Hunsicker, 4 Casey 115; Runyan's Appeal, 3 Id. 121; Riegle v. Sieger, 2 Penna. Rep. 340; Stecker v. Shimer, 5 Whart. 452; Duey v. Clemens, 1 Barr 118.

The order of sale was void: 1. Because the decree in partition remained unreversed, and was as obligatory upon the court as upon any individual.

2. Because the Orphans' Court had exhausted their power over this land, as the estate of the decedent, and were therefore incompetent to grant the order of sale.

3. Because the Orphans' Court had no jurisdiction over the subject-matter, the land in question being at the time the order of sale was granted the exclusive property of Abraham Worman, Jr.

Horner v. Hasbrouck, 5 Wright 169, decides that the rights of the creditors of a decedent are superior to those of the vendee of the sheriff selling the undivided right of an heir; but there no partition had been had as here.

The creditors of the decedent could proceed against the accepting heir, and he could defalk the payment against the recognisance: Dreisbach's Appeal, 5 Harris 126. Subrogation of the claim of A. Worman, Jr., cannot affect the plaintiffs, for it was done after their judgment had been obtained. The land could not be charged even against heirs without scire facias: Sample v. Barr, 1 Casey 457; McCracken v. Roberts, 7 Harris 395. In Groff v. Groff, 14 S. & R. 181, the recognisance was held to be void, and in Commonwealth v. Hants, 2 Penna. Rep. 333, and Commonwealth v. McIntire, 8 Barr 295, the land was sold under judgments against the administrator.

S. A. Bridges, C. M. Runk and W. S. Marx, for defendants in error.—The debts of the decedent were a lien for five years from his death. The partition did not give title, but divided the interest in the land belonging to the heirs; this interest was the land subject to the decedent's debts: Act of March 29th 1832, Purd. 294, pl. 130; Act of April 11th 1799, Purd. 773, pl. 21; Ross v. Pleasants, 7 Harris 157; Seaton v. Barry, 4 W. & S. 183. No notice need be given to the heirs before issuing the order of sale: Weaver's Appeal, 7 Harris 416; Soles v. Hickman, 5 Casey 342; Swar's Appeal, 1 Barr 92; Mix v. Ackla, 7 Watts 316. Horner v. Hasbrouck, 5 Wright 169, is decisive of this case, and overrules Milliken v. Kendig, 2 Penna. Rep. 477, and Luce v. Snavely, 4 Watts 397.

The opinion of the court was delivered, May 15th 1866, by Strong, J.—The defendants claim title to the land in contro-

[Dresher *v.* Allentown Water Co.]

versy under an Orphans' Court sale for the payment of the debts of Abraham Worman, Sr., deceased. The sale was ordered on the 21st of September 1848, regularly made and confirmed on the 15th of January 1849, and in the next following May a deed was made to the purchaser by the administrator of the decedent.

It is conceded that the decedent died seised of this land, that the debts, to enable the payment of which the sale was ordered, were liens at the time of the order, and that the order itself was formally executed. But the plaintiffs insist that the Orphans' Court had no authority to order a sale, because there had been a prior adjudication in partition of the land to Abraham Worman, Jr., a son and one of the heirs of the decedent, to whose title they have succeeded. Abraham Worman, Sr., died intestate, in August 1846, seised of the land in controversy, but considerably indebted, and without personal property to pay his debts. He left no widow, but he left two children and grandchildren, the children of a deceased child.

On the 5th January 1847, Abraham Worman, Jr., the son, presented to the Orphans' Court a petition for partition of the real estate, and an inquisition was awarded. A valuation was duly made, and on the 2d day of September 1847, the petitioner accepted the lands at the valuation, and they were adjudged to him by the court.

This adjudication, it is argued, established finally, that the lands belonged to Abraham Worman, the son; that they were no longer assets under the control of the personal representative of the decedent for the payment of debts; and, therefore, that the jurisdiction of the Orphans'. Court to order a sale at the instance of the administrator had terminated. Certainly this is a novel position. If it be well taken, our Acts of Assembly respecting the settlement of decedents' estates are strangely confused and inefficient. Then it is in the power of heirs to deprive creditors of a decedent of the right to an Orphans' Court sale of his lands, and even to take the administration of his estate out of the hands of his personal representative, though under the intestate laws heirs take only that which shall not have been sold, and which remains after the payment of all just debts and legal charges. Such is not the law. The plaintiffs mistake the nature and effect of the decree in partition. Its office is not to transfer the title of lands from the decedent to his heir, to whom the land may have been allotted by the inquest, or who may have elected to take at the valuation. It operates only upon the parties to it, who are the heirs. The creditors are no parties. As to them it is "*res inter alios acta.*" The object of the partition is to divide what descends to the heirs. It may be an equitable interest, there being an outstanding legal estate. It may be a defeasible estate. Whatever it is, the final adjudication

[Dresher v. Allentown Water Co.]

amounts to no more than, that as against the other parties, he to whom the land has been adjudged shall hold it in severalty. As heirs they are estopped from denying his sole ownership. Thus, in the Act of March 29th 1862, the judgment which the Orphans' Court is empowered to give is, "that the partition thereby made be firm and stable for ever." And in the 37th section it is enacted: "that the persons to whom or for whose use payment or satisfaction shall be so made, in any of the cases aforesaid, for their respective parts or shares of such real estate, shall be for ever barred of all right or title to the same."

It is the right of the parties to the partition that is the subject of adjudication. Orphans' Court decrees are doubtless conclusive. They cannot be impeached collaterally. But like all other judgments they are conclusive only of the thing adjudicated. Nothing in our Acts of Assembly, or in any decision of this court, justifies the assertion that a decree in partition assures to the acceptant anything more than the title of his co-heirs, whatever that may have been. It may be, as was said in Merklein v. Trapnell, 10 Casey 46, that the decree is "a mode of conferring title;" but it is the title of the heirs which is conferred, that which was said in Horner & Roberts v. Hasbrouck, 5 Wright 169, to be "a contingent interest defeasible on behalf of creditors."

Without, however, multiplying words, it will be seen that in our opinion, the plaintiffs ascribe undue effect to the proceedings in partition; that they were not at all inconsistent with the subsequent order of sale, and that the title acquired under that order must prevail. The jurisdiction of the Orphans' Court over the settlement of a decedent's estate, is not to be ousted or diminished by partition between the heirs. The plaintiffs themselves concede that the lien of the debts remained upon the land notwithstanding the adjudication of it to Abraham Worman, Jr., and that the decree cannot be attacked collaterally. But would not a sale under an execution for the debts of the decedent, as effectually destroy the ownership of Abraham Worman, Jr., as would an order of sale by the Orphans' Court? If the one impeaches the decree in partition, does not the other? If so, the argument of the plaintiffs must go to the length of asserting, that a decree in partition bars creditors from any resort to lands of a decedent divided among his heirs by Orphans' Court partition.

This absurdity results from losing sight of the nature and subject of the Orphans' Court decree.

                                    The judgment is affirmed.