# ESTATE OF DOMINICK BATIONE, DECEASED.

APPEALS BY C. L. BATIONE, AND F. J. MOTT, GDN., FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued March 25, 1890—Decided October 6, 1890.
[To be reported.]

(a) Subject to certain bequests to his father, sisters and others, a testator bequeathed the whole of his estate in trust for his wife for life, providing that at her death his daughter should enjoy its benefits until she attained the age of twenty-five years, when she should have an absolute right thereto.

Statement of Facts.

(b) He afterwards directed that in case his wife should outlive said daughter, two thirds of the whole estate should be divided equally, at his wife's death, between his father and sisters, and the remaining one third should become the absolute property of his friend, Pedro Salome, or his heirs forever:

1. The interest of the daughter under the will was a vested estate, subject to be divested by her death before her mother: McCall's App., 86 Pa. 254; Churchman's App., 22 W. N. 131; Montgomery v. Petriken, 29 Pa. 118; wherefore, the daughter having died in her minority, during her mother's life, the bequest of the one third to Salome took effect.

(c) Two thirds of the estate having been diverted by the election of the widow to take against the will, and by the birth of another child not provided for therein, the sum of $1,633.33 by consent of all parties, was paid to the testator's father and sisters, for a release of their rights, reducing the trust fund thereby to $697.89.

2. Salome was entitled, in addition to the one third of the trust fund bequeathed to him, to take the other two thirds, under the equitable doctrine that a bequest to a widow will be sequestrated to compensate a legatee disappointed by her election, said two thirds being less than what the widow would have taken under the will, and less than his loss by reason of her election.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

Nos. 330, 330½ January Term 1889, Sup. Ct.; court below, No. 34 October Term 1878, O. C.

On November 12, 1888, the account of the Fidelity Insurance, Trust & Safe Deposit Company, substituted trustee under the will of Dominick B. Batione, deceased, was called for audit, when the following facts were made to appear:

Dominick Batione died September 5, 1878, leaving a widow, Constance L. Batione, and two children, Modesta and Benicia, both of whom were minors. Benicia was born after the date of his will and was not provided for therein. Said will bore date June 3, 1876, and by it the testator bequeathed all his estate in trust for his wife for life, and at her death " our daughter to enjoy the benefits accruing from it until she attains the age of twenty-five years, when she is to have an absolute right to the whole of my estate, real and personal," such bequest to the trustee being subject to an annuity at the rate of $30 per month to the testator's father, and to certain bequests in favor of his sisters and others. The will then provided, further, as follows:

" In the event of my dear wife outliving our child Modesta, at my wife's death two thirds of the whole estate ($\frac{2}{3}$) is to be equally divided amongst my father and sisters then living, the remaining one third ($\frac{1}{3}$) to become the absolute property of my friend Pedro Salome, or his heirs forever."

The widow elected to take against the will.

By an adjudication upon the account of the administratrix, c. t. a., of the testator's estate, confirmed November 13, 1880, credit was allowed for certain sums which had been paid out of the estate to the father and sisters of the testator, by way of compromise of their claims under the will, and in consideration of releases thereof. The bequest to the trustee having been reduced by the election of the widow not to take under the will, and by the birth of Benicia after its date, to one third of the estate, the court charged against said bequest the one third of $1,000, the sum paid to the testator's sisters, but charged against it the whole of the amount paid the testator's father, to wit, $1,300. After deducting these charges, the sum of $697.89 was awarded to the trustee under the will. The remaining two thirds of the sum paid to the sisters of the testator was charged against the widow's share of the estate.

The testator's daughter Modesta died in December, 1887, in her minority, unmarried and without issue. Her mother, and her sister Benicia, survived.

Upon the foregoing facts, the auditing judge, HANNA, P. J., reported an adjudication awarding both the principal and the income in the hands of the accountant to Pedro Salome, and to Constance L. Batione, as mother and heir at law of Modesta Batione, deceased, in the proportion of one third to the former and two thirds to the latter.

Exceptions to the adjudication having been argued before the court in banc, on December 29, 1888, the following opinion was filed, HANNA, P. J. :

After a more careful consideration of the subject of the exceptions, we have reached the conclusion that the position assumed by the exceptant, Pedro Salome, is correct, and that he is entitled not only to the one third bequeathed to him, but, before any distribution, to be repaid the proportion he contributed of the amount paid the other residuary legatees to obtain a release of

their respective residuary shares.   It did not so clearly appear at the audit, but, upon further reflection, we think there can be no doubt that this is the proper conclusion.   And it is but equity that it should be so.

It is conceded that testator's daughter, Modesta, was entitled to the income of the trust fund until she attained the age of twenty-five years, when she was to be paid the principal.   And, by our construction of the will and the election of the widow to take against its provisions in her behalf, payment of the legacy to Modesta was accelerated and she became entitled absolutely, notwithstanding the provision that it be paid to her at the age mentioned, liable, however, to be defeated by her death before reaching that age, in the lifetime of her mother, when the residuary bequests took effect.

The trustee subsequently, by the payment of a certain sum to the father and sisters of testator, obtained the release of all their interests as legatees.   The result was to reduce the fund held in trust; and, as Pedro Salome, as legatee, was interested therein to the extent of one third, he consequently contributed that proportion of the sum paid to secure the releases.

The widow of testator, by her election, had no interest in the fund.   Modesta did not survive the age named in the will, but died a minor, leaving her mother surviving, whereupon the legacy held in trust for her became payable to the residuary legatees; but, as before stated, certain of the legatees were no longer interested, and Pedro Salome, the remaining legatee, contributed one third of the amount paid to them.

Under such circumstances, we think it very clear that in equity, before any distribution is made of the fund in excess of his one third residuary share, he should be repaid the sum he was obliged to contribute towards obtaining the releases from the other legatees.   In this manner only can he receive the one third of the residue bequeathed by the testator, and if this be not done and he be awarded only his one third of the remainder of the legacy held in trust, an undisposed of balance remains, no part of which he will receive.   The amount he contributed was for the benefit of the general estate, and, to ascertain his share, it should be considered either as not having been paid to the other legatees or returned by them to the trustee.

Thus, the entire amount for distribution will be arrived at,

and of which he is entitled to one third.   And now that a fund
exists for distribution, the loss he suffered should first be made
good to him, and the balance distributed according to the will.
It is upon this principle that, where a widow elects to take against
the will, a court of equity will sequester the benefits intended for
the wife, to secure compensation to those who are disappointed
by her election: Sandoe's App., 65 Pa. 314; Gallagher's App.,
87 Pa. 200; Calahan's Est., 7 W. N. 130.

The balance of principal and income stated in the account
is awarded as herein indicated, and counsel will prepare a de-
cree of distribution in accordance herewith.   Any balance of
income, however, due Modesta at her death, is awarded to
her mother, as heir-at-law, and the costs of the settlement of
the account, with counsel fees, to be deducted from the prin-
cipal.

A decree of distribution was then signed awarding to Pedro
Salome one third of the net balance of principal, to wit, $185.46;
one third of the amount, $1,633.33, paid out of the share of the
estate in distribution to the other residuary legatees for their
releases, to wit, $544.44; and the amount of income accruing
since Modesta Batione's death, to wit, $61.40; in all $617.79;
the income accounted for accruing prior to Modesta's death
being awarded to Mrs. Constance L. Batione, the widow.

Thereupon, Constance L. Batione took the appeal to No.
330, specifying that the court erred:

1. In deciding that Modesta's interest was defeasible upon
her death under the age of twenty-five years, in the lifetime of
her mother.

2. In awarding one third of the principal fund to Pedro
Salome.

3. In appropriating the remaining two thirds to Pedro Sa-
lome, in payment of one third of the sum charged against the
trust fund by the adjudication in 1880.

4. In appropriating in like manner the income accruing sub-
sequent to the death of Modesta.

5. In not awarding the whole fund to the appellant.

And F. J. Mott, guardian of Benicia Batione, took the ap-
peal to No. 330½, specifying, inter alia, that the court erred:

3. In not awarding two thirds of the principal, and the

whole of the income accruing after Modesta's death, to the appellant.

*Mr. J. W. Goheen*, for the appellants:

1. By the clause creating the trust, the corpus of the estate was vested in Modesta absolutely, the time of payment only being postponed until she should be twenty-five years of age. The language of the bequest does not import a condition that she should live to reach that age: Letchworth's App., 30 Pa. 175; Schriver v. Cobeau, 4 W. 130; Chew's App., 37 Pa. 23; Roberts's App., 59 Pa. 70; Smith on Executory Interests, §§ 300, 310, 328, 346; Reed's App., 118 Pa. 222; Provenchere's App., 67 Pa. 463. Having vested absolutely in Modesta at the death of the testator, on her death the estate descended to her mother. This is unmistakably the effect of the first provision in the will. Did the testator qualify it by the subsequent provision? We contend that the clause giving the fund to his father and sisters and Salome, was intended simply as a substitute for the prior provisions, to take effect in the event of the daughter's not surviving the testator.

2. Our position is sustained by the authorities laying down the rules by which the interpretation of wills is to be governed: 1 Swinburne on Wills, 19; Woelpper's App., 126 Pa. 562; Middleswarth v. Blackmore, 74 Pa. 414; Ferry's App., 102 Pa. 207; Fahrney v. Holsinger, 65 Pa. 394; Schoonmaker v. Stockton, 37 Pa. 463; Biddle's Est., 28 Pa. 59; Schouler on Wills, §§ 474, 476, 477, 478; Shreiner's App., 53 Pa. 106; Newbold v. Boone, 52 Pa. 174; Beach on Wills, 524; Williams on Executors, 221; Sheetz's App., 82 Pa. 213; Wetter's App., 20 W. N. 499; Stevenson v. Fox, 125 Pa. 568; Ommaney v. Bevan, 18 Ves. 291; Doe v. Considina, 6 Wall. 458; 1 Jarman on Wills, 472-486; Wood's Est., 36 Cal. 75; Bartlett v. King, 12 Mass. 536; Wright v. Denn, 10 Wheat. 204; Smith v. Crabtree, L. R. 6 Ch. Div. 591; Surtees v. Hopkinson, L. R. 4 Eq. 98; Key v. Key, 4 De G. M. & G. 73;. Langston v. Langston, 2 Cl. & F. 194; Abbott v. Middleton, 21 Beav. 143; Greenwood v. Greenwood, L. R. 5 Ch. Div. 954.

3. There is no warrant for restricting the word "outliving" to the time when Modesta would attain the age of twenty-five years, that does not exist, with greater force, in favor of its re-

striction to the time of the testator's death. The latter would make the will a consistent, congruous whole. If this was not the intent of the testator, he would not have failed to provide for the contingency of his widow's death before that of Modesta. Moreover, the repetition of the reference to his wife's death was wholly unnecessary, if his intention was to qualify the former absolute bequest to his daughter. Any other construction than that we contend for would disinherit any children of Modesta, and this is a controlling consideration: Scott v. Price, 2 S. & R. 63; Holmes v. Holmes, 5 Binn. 259; Beltzhoover v. Costen, 7 Pa. 18; Howe's App., 126 Pa. 233; Hauer v. Sheetz, 2 Binn. 545; Cropley v. Cooper, 19 Wall. 167; Goodtitle v. Whitby, 1 Burr. 234; Coggins' App., 124 Pa. 30; and authorities previously cited. The law leans in favor of an absolute rather than a defeasible estate: Ryon's App., 124 Pa. 528.

4. If the bequest should be construed as not vesting absolutely in Modesta, then we contend, on behalf of the guardian of Benicia, that two thirds of this fund, being undisposed of by the will, descended to Benicia as heir of her father. The decree of 1880, under which $1,633.33 of the sums paid to the father and sisters was charged to Modesta's share, stands unreversed, and Salome must be presumed to have consented to it. There is, therefore, no equity in the appellee to have any part of it returned to him, and the principle invoked by the court below does not apply. A widow's right to elect to take against a will is inviolable: § 11, act of April 8, 1833, P. L. 250; § 11, act of April 11, 1848, P. L. 537; Bard's Est., 58 Pa. 393; and so is that of an after-born child; § 15, act of April 8, 1833, P. L. 251. The principle referred to will sequester the interests given by the will to the widow, for the benefit of the disappointed beneficiaries: Pomeroy's Eq. J., § 517; Story's Eq. J., § 1084; Sandoe's App., 65 Pa. 314; Bard's Est., supra. But it will not justify the taking for that purpose of property which she inherits from another, and, a fortiori, will not justify taking the property of the after-born child.

*Mr. Charles H. Sayer*, for the appellee:

1. The intention of the testator is clearly expressed by his

Arguments.

language, and the rules of construction invoked by the appellant are not applicable: Howe's App., 126 Pa. 233. The will clearly provides that in the contingency which has occurred, Pedro Salome should receive one third of the estate. The widow having elected to take against the will, it must be construed as though the portion of the estate going to her did not form a part of it: 3 Redf. on Wills, 389; Bard's Est., 58 Pa. 393; Brown's App., 27 Pa. 62. Equity, however, will sequester the benefit intended for her, in order to compensate those disappointed by her election: Calahan's Est., 7 W. N. 130; Sandoe's App., 65 Pa. 314; Gallagher's App., 87 Pa. 200. The only effect of the subsequent birth of a child is to revoke the will pro tanto: Walker v. Hall, 34 Pa. 483; Coates v. Hughes, 3 Binn. 498; Edwards's App., 47 Pa. 144; Hollingsworth's App., 51 Pa. 518.

2. When a contingency is annexed to the substance of the gift, and not merely to the time of payment, the legacy is contingent: Seibert's App., 13 Pa. 501; Dunwoodie v. Reed, 3 S. & R. 435; Stump v. Findlay, 2 R. 168; Calahan's Est., 7 W. N. 130; List v. Rodney, 83 Pa. 483; Peirce's App., 4 W. N. 439; Reiff's App., 124 Pa. 145. It makes no difference, so far as we are concerned, whether the legacy to Modesta is contingent, or is vested subject to being divested by the happening of the contingency. The view of the court below, that the latter is the case, may be correct: McCall's Est., 1 W. N. 269; McCall's App., 86 Pa. 254; Hopkins v. Jones, 2 Pa. 69; Umstead's App., 60 Pa. 365; Montgomery v. Petriken, 29 Pa. 118; Manderson v. Lukens, 23 Pa. 31; Kirk's Est., 6 Phila. 73; Churchman's Est., 20 W. N. 367; Churchman's App., 22 W. N. 131; Fearne on Rem., 10, note h.; Idem 16.

3. Under the terms of the will, Salome is entitled to one third of the whole estate; but there was left only one third for the will to operate upon, and he receives but one third of that. This loss was occasioned partly by the election of the widow, and she is now the claimant of this whole fund. As the testator's father and sisters have released their claim to the two thirds of this money, there is a fund, arising from circumstances not contemplated by the testator, which is in the same position as a lapsed residuary legacy: Everman v. Everman, 15 W. N. 417; Reed's Est., 82 Pa. 428; 1 Redf. on Wills, 437. The

court below clearly states the principles upon which Salome is entitled to be recompensed out of that fund. See also Sandoe's App., 65 Pa. 314; Gallagher's App., 87 Pa. 200. This is not taking the property of one person and giving it to another; but is using subsequently acquired property of the estate, upon which the will does not operate, to pay that which the estate should have paid originally.

OPINION, MR. JUSTICE GREEN:

The contingency, upon the happening of which Pedro Salome was to have an interest in the estate of the testator, has actually occurred; and, if there is any part of the estate accessible to him, he should have it in accordance with the precise terms of the will, unless there is some very good reason for excluding him. That contingency is thus expressed in the will: "In the event of my dear wife outliving our child, Modesta, at my wife's death two thirds of the whole estate ($\frac{2}{3}$) is to be equally divided amongst my father and sisters then living, the remaining one third ($\frac{1}{3}$) to become the absolute property of my friend Pedro Salome or his heirs forever." The widow did outlive the child Modesta. The two thirds of the estate bequeathed to the father and sisters were released upon the payment to them of $1,633.33, while Modesta was yet living. The money to pay that sum was taken from the body of the trust estate, and to that extent the principal of the estate has been diminished. By the election of the widow to take at law, and the birth of a posthumous child, each of them being entitled to one third part of the estate absolutely, two thirds of the estate are diverted from the operation of the will, and Salome's interest, if he has any, is but one third of a third, or one ninth of the whole. Two questions arise: first, is the remaining third of the estate to be treated as a part of the estate of the deceased, and subject to the operation of his will? and, second, is Salome entitled to be compensated out of this part of the estate, for his disappointment on account of the election of the widow?

Both appellants, being the widow and second child, claim that the share of Modesta was absolutely vested in her from the death of her father, and as such descended to them under the intestate law; and, if this be so, Modesta's share is not a part of the testator's estate, and is not subject to the operation

of his will.   But we are not able to take that view of the question.   We think the learned court below was correct in holding that Modesta's interest was a vested estate, subject to be divested by her death before her mother.   The positive and express provision of the will cannot be disregarded.   Its meaning is perfectly free of doubt, and it is not necessary to invoke rules of construction, which are only intended for doubtful cases, in order to ascertain the intention of the testator.   The language he has used fully expresses his meaning, and, by consequence, his intention.   His wife did outlive Modesta; and, in that one event alone, he did direct that two thirds of his estate should be equally divided amongst his father and sisters, and the remaining one third should become the absolute property of his "friend Pedro Salome, or his heirs forever."   An instance of this kind occurred in McCall's App., 86 Pa. 254, where M. bequeathed a certain fund to her executors, in trust to pay the income to G. for life, and after his death to pay the income to W. until he attained the age of twenty-five years, and on his arriving at that age to pay to him the principal; but, if he should die before he reached that age, without wife or issue surviving him, then the principal was to go to the eldest child of P.   The auditor, whose report was adopted by this court, thus described the interest of W.: "This is not merely a direction to pay; it is a direct gift to trustees upon certain trusts; and the words 'to pay,' are the usual words defining the duty of the trustee, and created an estate in George C. McCall for life, and a vested remainder in William C. McCall, subject to be divested upon his death before arriving at the age of twenty-five years."   As William survived his age of twenty-five years, his estate became completely vested, but it was correctly described by the auditor as subject to be divested by his death before that time.   Another instance of the same kind occurred in Churchman's App., 22 W. N. 131, (not reported in State Reports,) in which the opinion of the Orphans' Court was adopted as reported in 20 W. N. 367.   A testator by his will bequeathed property to his wife for life, and at her death bequeathed legacies which he directed should not take effect until after his wife's death.   By a codicil he directed that, if any legatee should die during the wife's lifetime, his legacy should lapse into the residuary estate: Held,

that the legatees took a vested interest, subject to be divested in the event of their deaths before the testator's wife. In Montgomery v. Petriken, 29 Pa. 118, Lowrie, J., said: "The devise over to Robert and James after the death of William is in form a vested remainder, and we think it is so in substance. The estate is really granted to William for life, with remainder in fee to Robert and James, and it is only on condition that William shall recover his sanity that he is to have a fee, and then it is to be by defeating the fee previously granted to the others. Their fee is vested, subject to be defeated if ever the event contemplated should happen." Authorities to the same effect might be easily multiplied, but it is quite unnecessary. The question is too plain.

At the time of the original adjudication of the estate in 1880, the sum of $1,633.33 was deducted from the amount awarded to the trustee, by consent of all parties, apparently, in order to purchase releases from the testator's father and sisters. Were they now interested, they would under the will be entitled to two thirds of the trust fund; but, having released their interests, and the releases having been obtained for the benefit of the estate, a fund arises which was not within the contemplation of the testator, and not provided for by his will. As the trust fund was diminished to that extent, and the appellee's interest in it remains, it is plain that his share of the fund contributed one third of the amount paid for the releases. The death of Modesta, before her mother and before attaining the age of twenty-five years, having returned into the estate her share of the fund, a fund is established accessible to the appellee to compensate him for the loss he sustained by the election of the widow. This equitable doctrine has been fully recognized and enforced in this state. Thus, in Sandoe's App., 65 Pa. 314, we said : " The rule in equity treats the substituted devises and bequests to the wife as a trust in her for the benefit of the disappointed claimants, to the amount of their interest therein ; and the court will assume jurisdiction to sequester the benefit intended for the refusing wife, in order to secure compensation to those whom her election disappoints." The same doctrine was also applied in Gallagher's App., 87 Pa. 200.

It is argued on behalf of the daughter Benicia that, if we hold that the share of Modesta was lapsed and returned into the es-

tate of her father, it descends to her under the intestate law, and no part of it can be appropriated to the compensation of the appellee for his loss by reason of the widow's election. But the estate given by the will to the widow was an estate for life in the whole of the decedent's property, and it is this interest of the widow under the will that is sequestrated for the use of the disappointed legatee. As that interest computed to the present time would have amounted, since the death of the testator in 1878, to twelve years' enjoyment of the income which the widow would have taken under the will, and to the further income for as many more years as she may live, it is obvious that her bequest would amount to much more than the sum decreed to the appellee. The fund in question, being a part of the estate of the testator undisposed of by his will, is liable, in the first instance, to sequestration for the benefit of the appellee as a disappointed legatee. If anything is left after this has been done, the rights of Benicia under the intestate law can be considered.

> The decree of the Orphans' Court is affirmed, and the appeals are dismissed, at the costs of the appellant.