# Schmucker v. Adams, Appellant.

*Intestate laws—Decedents' estates—Inheritable blood—Partition.*

Where a granddaughter takes an undivided interest in her grandfather's real estate under the intestate laws, and thereafter her share in the real estate is set off to her in partition proceedings, the partition does not operate upon the title, or in any way change its character, nor create a new title.   In such a case the granddaughter continues to hold the estate as by descent from her grandfather, and upon her death intestate as to such land, no one takes who is not of the blood of the grandfather.

Argued Nov. 15, 1910.   Appeal, No. 27, Oct. T., 1910, by defendant, from judgment of C. P. Berks Co., Dec. T., 1909, No. 60, for plaintiffs on case stated in suit of Rebecca A. Schmucker et al. v. Agnes H. Adams.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Case stated to determine title to real estate.

ENDLICH, P. J., filed the following opinion:

It appears from the record in this case taken as a whole that plaintiffs sold certain real estate to defendant, who, after paying the larger part of the consideration, refuses to pay the balance of $1,250 on the ground that the vendors have no title to convey. This action is brought to recover that amount. The plaintiff's declaration was met with an affidavit of defense making a general denial of plaintiffs' right and defendant's liability. Thereupon the parties agreed upon a statement of the case for the decision of the court. All the facts being explicitly set forth therein it is unnecessary to rehearse them at length. The question arising upon them seems to be a simple one, and the answer to it plainly prescribed by the express language of the statute.

The Act of April 8, 1833, P. L. 315, declares in sec. 6, that: "In default of issue, and brothers and sisters of the whole blood and their descendants, and also father and mother, competent by this act to take an estate of inheritance therein, the real estate . . . . shall descend to and be vested in the brothers and sisters of the half blood of the intestate, and their issue, in like manner, respectively, as is . . . . provided for the case of brothers and sisters of the whole blood and their issue."     .

To this sec. 9 of the same act adds the proviso: "That no person who is not of the blood of the ancestors . . . . from whom any real estate descended, or by whom it was given or devised to the intestate, shall, in any of the cases before mentioned, take any estate of inheritance therein, but such real estate, subject to such life estate as may be in existence . . . . shall pass to and vest in such other persons as would be entitled by this act, if the persons not of the blood of such ancestor . . . . had never existed, or were dead at the decease of the intestate."

The real estate of which that here in question is a part was originally acquired by Joseph Hiester. Mary E.

Deininger was his granddaughter. On his death his estate descended, in undivided fifths, to the children and grandchildren of Joseph Hiester. A partition proceeding upon his estate was instituted in the orphans' court. Under it, Mary E. Deininger accepted and had adjudged to her approximately (about 1–50 in excess of) one-fifth thereof. It is settled by a long line of decisions that partition, whether made amicably or in the common pleas or the orphans' court, does not operate upon the title or in any way change its character nor create a new title: Goundie v. Water Co., 7 Pa. 233; McClure v. McClure, 14 Pa. 134; Ross v. Pleasants, 19 Pa. 157; Allen v. Gault, 27 Pa. 473; Montgomery v. Petriken, 29 Pa. 118; Dresher v. Water Co., 52 Pa. 225; Williard v. Williard, 56 Pa. 119; Harlan v. Langham, 69 Pa. 235; Seiders v. Giles, 141 Pa. 93; Perrine v. Kohr, 205 Pa. 602. It merely dissolves the cotenancy and severs the possession according to the interests as they existed before. It follows that what was adjudged to Mary E. Deininger in the partition proceeding was so adjudged as coming to her by descent, and as conceded to be hers by descent from Joseph Hiester, and that she held it as hers by such descent. When in 1838 she died, intestate as the law then stood, her husband (who parted with his interest in 1870 and died in 1881) took an estate for life in the realty of his wife; but the fee of it .went to her half-brothers and half-sister of the blood of Joseph Hiester: Parr v. Bankhart, 22 Pa. 291; Lynch v. Lynch, 132 Pa. 422,—i. e., to Hiester H. Muhlenberg, Henry A. Muhlenberg II, and Rosa Nicolls. The latter's share, under her marriage settlement, descended at her death to her brothers just named. Henry A. Muhlenberg II died in 1854, leaving a widow and a son, Henry A. Muhlenberg III, and devising his estate to the latter. The widow subsequently remarried and died in 1906, survived by Henry A. Muhlenberg III, and a son by the second marriage having none of the blood of Joseph Hiester. Henry A. Muhlenberg III died shortly after his mother, survived by his half-brother. His devise of his

entire estate to his mother was ineffective by reason of her predecease: Sword v. Adams, 3 Yeates, 34. An amicable partition made in 1902, between Henry A. Muhlenberg III and his then cotenant is, for the reason already stated, of no significance for present purposes. His title before and after the partition was by descent and devise, never by purchase. This circumstance is controlling of the application of the statute above quoted as determining the succession of those of the blood of the ancestor: Lynch's Est., 220 Pa. 14. That ancestor was Joseph Hiester. With respect to the realty of Henry A. Muhlenberg III derived from Joseph Hiester (and it is a portion of that only that is here involved) the heirs of Henry A. Muhlenberg III were the surviving sons and daughters of Hiester H. Muhlenberg, descendants of Joseph Hiester. They and by conveyance from them the children of a deceased daughter, i. e., all the plaintiffs in this case, must therefore be adjudged to be the owners of the property. Hence according to the terms of the case stated they are entitled to judgment.

And now, January 17, 1910, upon the case stated judgment is entered for plaintiffs and against defendant for $1,250.

*Error assigned* was the judgment of the court.

*William J. Rourke,* for appellant.

*P. S. Zieber,* of *Snyder & Zieber,* for appellees.

PER CURIAM, December 12, 1910:

The judgment is affirmed for the reasons given in the opinion of the learned president judge of the common pleas.