[PHILADELPHIA, JANUARY 28, 1833.]

## Case of JONAS HARTMAN'S Estate.

APPEAL.

Where a person dies intestate, leaving no lawful issue, nor a father, but leaving a mother, and brothers and sisters, seized of real estate which he had from his father, or his father's legal representatives, as a purchaser for value, his mother is entitled to an interest in the estate under the seventh section of the act of the 19th of *April*, 1794.

Testator by his will directed that on his youngest child coming of age, his executors should sell the whole of his real and personal estate, and divide the proceeds equally between his wife and six children; and by a codicil directed that when his youngest son should be of full age, the estate should be appraised, and his sons, *Jonas* and *Elias*, should "have the first choice to accept the same, if they choose to do so." The executors, after the youngest child attained full age, exposed the premises to public sale, when they were struck off to a bidder who failed to comply with his contract; upon which one of the sons, *Jonas*, who was also one of the executors, agreed to take the estate at the price bidden, which was considered by the executors and heirs as a fair one, and a deed was executed to him by his co-executors. *Jonas* afterwards died, seized of the estate, leaving no issue, but leaving a mother and brothers and sisters. *Held:* that his mother was not entitled, under the seventh section of the act of 19th of *April*, 1794, to an interest in that portion of the estate, which could have descended to him if his father had died intestate, but that she was entitled to an interest in those portions which he acquired as a new purchaser.

THIS was an appeal from the decree of the Circuit Court of *Lehigh* county, affirming the decree of the Orphans' Court of that county, in relation to the distribution of the estate of *Jonas Hartman*, deceased.

*Jonas Hartman*, died about the year 1829, leaving no issue, but leaving a widow, a mother and brothers and sisters. He was seized at the time of his death of a tract of land in *Lehigh* county, the title to which he derived in the following manner, viz: *Jacob Hartman*, the father of *Jonas*, was seized of the premises, and on the 6th of *December*, 1815, made his will, which after his decease, to wit, on the 12th of *January*, 1820, was duly proved. The will contained the following clauses: "It is likewise my will that my said wife, *Eve*, shall remain in the full possession of my plantation, until she marries, or my youngest child shall come to age, and in case my widow shall not marry again, then as soon as my youngest child then living comes to age, the whole of my real and personal estate shall be sold by my executors, and divided in equal shares between my wife and my six children, *Sarah, Jacob, Esther, Elizabeth, Jonas,* and *Elias,* but in case my widow shall marry again, then my personal estate only shall be sold, and my widow shall receive what the law will allow her, and no more, and my real estate shall then be sold when my youngest child arrives to age," &c. "And I authorise my executors when my youngest child is of age, to sell my real estate by public or private

sale, and to make and deliver good titles for the same, and I hereby bequeath my whole estate and the reversion thereof to my six children, *Sarah, Jacob, Esther, Elizabeth, Jonas,* and *Elias,* and to their heirs and assigns forever. And after this is so done, my beloved wife *Eve,* shall have as her dower or *ausbehalt,* as long as she remains my widow, the lower room and the cellar under the room," &c. &c. The testator appointed his wife *Eve,* his son-in-law, *Jacob Seipel,* and his son *Jonas,* his executors.

Subjoined to the will was a paper without date or signature, in the hand writing of the decedent, *Jacob Hartman,* but not proved with the will, in which he says, " And I again recommend to my executors that when the youngest child will be of full age, that then my plantation shall be appraised, and *Jonas* and *Elias,* shall have the first choice to accept the same if they choose to do so."

" N. B. It is also my will that my wife *Eve's* share or purpart, which she takes equally with my six children, shall remain on said plantation as long as she shall be my widow, and she shall receive annually, the interest thereof," &c. " And it is my will that my wife *Eve,* shall take a mortgage or security on my plantation for the time she shall remain my widow, and have the same recorded," &c.

The testator died in *December,* 1819, and in 1825, *Elias,* the youngest child, attained his full age.

The land was exposed to public sale by the executors on the 4th of *February,* 1826, and struck off to *John Schweitzer,* at fifty-six dollars and one cent an acre, and he neglecting to comply with his contract, *Jonas Hartman* took the land at *Schweitzer's* bid, which was considered by the executors and heirs a fair price for it.

On the 8th of *April,* 1826, *Eve Hartman,* and *Jacob Seipel,* two of the executors, executed to *Jonas Hartman,* their co-executor, a deed for the premises, subject to the payment of the interest of three hundred and twenty-nine dollars and thirty-one cents, annually to *Eve Hartman,* during her life, and of the principal to the heirs of *Jacob Hartman,* after her decease. The residue of the price amounting to one thousand nine hundred and seventy-five dollars and fifty-five cents, was paid or accounted for to the executors, and distributed among the six children of *Jacob Hartman,* of whom *Jonas* was one.

On the 14th of *September,* 1828, *Eve Hartman* married *John Hummell.*

*Jonas Hartman* having died without issue, but leaving a mother, brothers and sisters, on petition of some of the heirs, an inquest was held under the intestate laws, and the estate being incapable of division, it was appraised. The inquisition was confirmed by the court, and the property accepted by one of the heirs. The question which then arose was, to whom the appraised value should be paid.

The Orphans' Court appointed an auditor to make distribution, who reported as follows:—

(Case of John Hartman's Estate.)

|  |  |  |  |  |
|---|---|---|---|---|
| " Valuation Money, |  |  | $3,200 | 00 |
| Deduct expenses of inquisition, | $37 | 85 |  |  |
| Amount due by *Jonas Hartman*, to the estate of *Jacob Hartman*, deceased, (on account of purchase money,) | 146 | 22 2-7 |  |  |
| Interest due *Eve Hummell*, late *Eve Hartman*, from *September* 14, 1828, to *April* 1, 1830, | 30 | 57 5-7 |  |  |
| Auditor's wages, | 3 |  | 217 | 65 |
|  |  |  | 2,982 | 35 |
| Amount of a lien on the land in favour of *Eve Hummell*, subject to which the land was accepted, |  |  | 329 | 31 |
|  |  |  | 2,653 | 04" |

This sum of two thousand six hundred and fifty-three dollars and four cents, the auditor directed to be distributed as follows:—

" A bond to be given to *John Schweitzer*, and *Margaret*, his wife (the widow of *Jonas Hartman*,) for one thousand three hundred and twenty-six dollars and fifty-two cents, being one-half of the nett valuation money, the interest thereof to be paid to her, during life, and the principal, at her decease.

" Three hundred and two dollars and seventy-five cents, the amount of *Jonas Hartman's* share of his father's estate, to be immediately distributed among his brothers and sisters.

" One thousand and twenty-three dollars and seventy-seven cents, the residue of the nett valuation money to remain in the premises, the interest thereof to be paid to *Eve Hummell*, late *Hartman*, the mother of *Jonas*, during life, and the principal at her decease, and bonds to be executed by the acceptant of the real estate accordingly."

This report was read and confirmed, *nisi*, on the 13th of *May*, 1831. On the 14th of *May*, 1831, exceptions were filed by the widow, and the mother of the deceased, and by *Jacob Seipel*, one of the heirs, and rules were granted to show cause why the report should not be set aside or corrected.

The exception filed on behalf of the widow of *Jonas Hartman*, was, " That the auditor had not directed a bond to be given to *John Schweitzer*, and *Margaret*, his wife, and the survivor of them, conditioned for the punctual payments of the interest of the one thousand three hundred and twenty-six dollars and fifty-two cents, stated on said report as the half of the said *Jonas Hartman's* estate ; the said *Margaret Schweitzer*, late *Margaret Hartman*, being widow of the said *Jonas Hartman*, who left no issue."

The exception filed on behalf of the mother, was, " That the auditor has directed a bond to be given to the heirs and legal representatives of *Jacob Hartman*, the father of the said *Jonas Hartman*,

(Case of John Hartman's Estate.)

deceased, payable at the death of *Eve Hartman,* now *Eve Hummell,* widow of the said *Jacob,* and mother of the said *Jonas,* the interest to be paid annually to the said *Eve,* during her natural life, counting from *April* 1, 1830, for one thousand and twenty-three dollars and seventy-seven cents: Whereas, there should have been a bond given to *John Hummell,* and *Eve,* his wife, late *Eve Hartman,* in the same way to enforce payment of the yearly interest to the said *Eve Hartman,* the widow."

The exception filed on behalf of *Jacob Seipel,* married to a sister of *Jonas Hartman,* was, "That the auditor erred in directing a bond to be given to *Eve Hummell,* late *Eve Hartman,* who is the mother of *Jonas Hartman,* deceased, for the sum of one thousand and twenty-three dollars and seventy-seven cents."

On the 2d of *September,* 1831, the Orphan's Court made the following decree: "That the account reported by *John Rice,* auditor, be corrected in this, that instead of a bond being given to *Eve Hummell,* formerly *Eve Hartman,* widow of *Jacob Hartman,* deceased, and mother of the said *Jonas Hartman,* deceased, for the sum of one thousand and twenty-three dollars and seventy-seven cents, that the bonds be given for the said sum of one thousand and twenty-three dollars and seventy-seven cents, to the brothers and sisters of the said *Jonas Hartman,* as if *Jonas Hartman* had survived his said mother *Eve.* The court also decree that a bond be given by the acceptant of the real estate of *Jonas Hartman,* deceased, to *John Schweitzer,* and *Margaret,* his wife, in the penalty of one thousand three hundred and twenty-six dollars and fifty-two cents, conditioned for the payment of seventy-nine dollars and fifty-nine cents annually on the 1st day of *April,* counting the 1st day of *April,* 1831, for and during the natural life of *Margaret Schweitzer,* widow of said *Jonas Hartman,* deceased, and that the said acceptants pay immediately to the said *John Schweitzer,* and *Margaret,* his wife, seventy-nine dollars and fifty-nine cents, being the interest due at this time, to the said widow of *Jonas Hartman,* deceased. And the court also decree that the said acceptant of the said real estate, give bond to the brothers and sisters of the said *Jonas Hartman,* deceased, (naming them,) in the penalty of two thousand six hundred and fifty-three dollars and four cents, conditioned for the payment of one thousand three hundred and twenty-six dollars and fifty-two cents, on the day of the death of *Margaret Schweitzer,* late *Margaret Hartman,* widow of *Jonas Hartman,* now deceased, and the report thus corrected, is confirmed by the court, and the exceptions dismissed."

From this decision of the Orphan's Court, *John Hummell,* and *Eve,* his wife, appealed to the Circuit Court, and filed their exceptions.

In the Circuit Court, his honour Judge HUSTON, without argument, affirmed the decree of the Orphan's Court, in order to bring up the whole case before the Supreme Court, without prejudice, and the appellants appealed to this court.

The following reasons for the appeal were filed:—

1. That under the intestate laws of Pennsylvania, the mother of the deceased, (who died intestate without issue, but leaving a wife, a mother, and brothers and sisters,) was entitled to enjoy during life, the income of one half of the nett proceeds of the real estate of the deceased, after payment of his debts, and the court should have so decreed in this case.

2. That the real estate of the deceased, or the valuation money thereof, should not have been decreed to the widow and brothers and sisters of the deceased, to the exclusion of the mother, such estate having been acquired by the intestate by purchase, in the strict sense of the term, in his life time.

*J. M. Porter* for the appellants, referred to the act of the 19th of *April,* 1794, sec. 4. 7. 8. *Purd. Dig.* 402, 403. *Ferree* v. *The Commonwealth,* 8 *Serg. & Rawle,* 312. *Stoolfoos* v. *Jenkins,* 8 *Serg. & Rawle,* 167. *Fogelsonger* v. *Somerville,* 6 *Serg. & Rawle,* 267. *M'Cullough* v. *Wallace,* 8 *Serg. & Rawle,* 181. *Simpson* v. *Hall,* 4 *Serg. & Rawle,* 337. 342. *Shippen* v. *Izard,* 1 *Serg. & Rawle,* 222. *Bevan* v. *Taylor,* 7 *Serg. & Rawle,* 397.

*Gibons* and *Davis* contra, cited *Allison executor of Henderson* v. *Wilson's executors,* 13 *Serg. & Rawle,* 332. *Toller,* 360. 3 *Ba. Ab.* 30, 31. *Nicholson* v. *Halsey,* 1 *Johns. Ch. R.* 417. 2 *Ba. Ab.* 304. *Lutw.* 313. *Burke* v. *Lessee of Young,* 2 *Serg. & Rawle,* 383.

The opinion of the court was delivered by

GIBSON, C. J.—By the fifth and seventh sections of the act of 1794, the father or mother of an intestate succeeds to a portion of the inheritance, where it has not come "on the part of" the opposite parent; but in the eleventh section, which provides for the case of the half-blood, the exception is where "such inheritance came to the said person, so seized, by descent, devise, or gift of some one of his ancestors; in which case all those who are not of the blood of such ancestor, shall be excluded from such inheritance." The difference in the phraseology, as regards the parent and the half-blood, must have been accidental, for it surely could not be an object to exclude the parent, more than it could be to exclude the issue of such parent, merely because the title was transmitted by the opposite parent to the intestate as a purchaser for value, just as it would have been transmitted to a stranger. Where the transfer is in pursuance of a purchase, in the popular sense, the parties stand in relation to the transaction, not as parent and child, but as vendor and vendee; and there is no reason to exclude the other parent from a portion of the inheritance that would not equally hold in respect of a purchase from a third person. The question then is, whether the intestate here had the estate from his father as a purchaser for value, or by descent, gift, or devise. As regards those portions of it, which would have passed to his brothers and sisters, had his father died intestate, there

can be no question, as they can by no construction be treated as having descended : and on the other hand, having been paid for to the father's representatives, they stand in relation to the question as if they had been paid for to the father himself. The difficulty is in regard to the part that would have descended, had the father died intestate. At the common law, every devisee being a purchaser and the founder of a new stock, the question, in cases like the present, is, whether the estate came by descent or by purchase, technically so called. The rule is, that it shall be treated as if transmitted by descent, wherever the will gives, as regards quantity and quality, though clogged with a condition or incumbrance, exactly what the law would have given : in other words, that incumbering the estate by the will, shall not alter its descendable quality, the law casting it on the heir, notwithstanding the devise to him, merely subject to the charge. *Co. Lit.* 12, *b. note* 2. *Hedger* v. *Rowe*, 3 *Lev.* 127. *Allen* v. *Heber*, 1 *Bl. Rep.* 22. *Hurst* v. *The Earl of Winchelsea*, 2 *Burr.* 879, and *Clerk* v. *Smith*, 1 *Salk.* 241, where *Gilpin's case Cro. Car.* 161, is denied to be law. The legislature have thought fit to extend the principle, in favour of the blood of the first purchaser, to a gift or devise; but by the latter word, it was undoubtedly meant to provide only for a testamentary *gift;* for being coupled in the clause with the word gift, as applicable to a gratuitous disposition of the estate, taking effect in the decedent's life-time, it shews pretty clearly, that nothing but a gratuity, whether by devise or *inter vivos*, was intended to be provided for. The legislature must, therefore, be supposed to have used the word in its popular sense, as importing a testamentary gift, without intending to exclude either parent or the brothers and sisters of the half-blood, where the arrangement was in fact a testamentary sale. The presumption is a natural one, that had the absolute owner been permitted by prolongation of his life, to dispose of the estate, he would not have excluded persons so near in blood, in favour of more remote kindred, merely because the title, and not the beneficial interest, had been derived from their common ancestor. It is unnecessary to determine here, whether in settling the construction of our statute, we ought to apply the principle of the common law, which merges the equitable in the legal estate, where they have been united for the first time in the person of the decedent, so as to restrain the descent to the line of the latter ; but it is not too much to say that it would scarce be deemed applicable to such a case as that of *Nicholson* v. *Halsey*, 1 *Johns. Ch. R.* 417. In the case before us, the difficulty arises on what is said to be the main clause in the will, which gave the devisees not an estate in the land, though the descent was broken, but the produce of the land when sold by the executors, which was determined in *Allison* v. *Wilson*, 13 *Serg. & Rawle*, 330, and *Morrow* v. *Brenizer*, 2 *Rawle*, 185, to be such an interest as is not bound by a judgment; and hence, it might perhaps be contended that the whole was acquired neither by descent nor devise, but by purchase. But by a subsequent clause admitted to have been since proved

(Case of John Hartman's Estate.)

as a codicil, and therefore proper to be considered here, the testator directed the executors to offer the land to *Jonas*, or *Elias*, at a valuation. No formal valuation was in fact made, but what is effectively the same, the land was put up at public sale, and taken by *Jonas*, the intestate, at the highest price bidden. It is only by considering this as a substantial compliance with the will that the title can be considered as available, for *Jonas*, who was also an executor, could not purchase at his own sale. Having taken directly under the will, he was a gratuitous devisee of his own share, but a substantial purchaser of the rest. This principle is in accordance with the decisions that have been made where the whole estate has been decreed to one of the children of an intestate by the Orphan's Court; and the only case which seems to stand in the way of the same conclusion in the case of a devise of the whole to one of the children on condition of paying an equivalent to the others, is *Reading* v. *Royston*, 1. *Salk.* 242, *S.C.* : where it was held that a devisee who would have taken but a part of the estate by descent, as in the case of a devise of the whole to the son of a deceased parcener, shall take the whole by purchase, instead of taking a moiety by purchase and a moiety by descent: in other words, that all shall be deemed to have passed by the will. There is however, no actual discrepance; for in the case before us, the whole is deemed to have passed by the will, and the devisee is supposed to be technically speaking a purchaser of the whole, though not such a devisee of any thing but his own portion as was within the contemplation of the legislature. To an interest in that portion, coming as it did, on the part of the father, the mother of the intestate is not entitled ; but in respect of the other portions which were acquired as a new purchase, her right is indisputable. It is, therefore, ordered that the decree of the Circuit Court, and of the Orphan's Court, be reversed, and that the report of the auditor be confirmed ; in addition to which it is ordered that a bond be executed to *John Hummell*, and *Eve*, his wife, to secure the interest annually payable to her.

Decree accordingly.