JOHN SHEPARD *vs.* GUSTAVUS TAYLOR *et als.*

The decision of this court heretofore given in this case, 15 R. I. 204, and affirmed after a reargument, is reaffirmed on a petition for a rehearing.

A rehearing of a suit in equity will be allowed at the discretion of the court, and this discretion will be liberally exercised in favor of the rehearing.

BILL OF INTERPLEADER.    On petition for a rehearing.

After the proceedings in this case reported in 15 R. I. 204–208, the respondents other than Martha O. Taylor filed a petition for a rehearing.    This petition Martha O. Taylor moved to dismiss, a reargument having already been allowed.    After hearing counsel, the court filed the following rescript.

*November* 10, 1887.    PER CURIAM.    The case *Hodges* v. *New England Screw Co.* 3 R. I. 9, decided A. D. 1853, has always since then been regarded as settling the practice of this State in regard to the rehearing of suits in equity on petition.    The court then decided as a rule of practice, subject to alteration by a new rule if found necessary, that a rehearing would be granted by the court in its discretion upon petition preferred within a year, even when the error alleged was simply error of law, and the court added that the discretion should be exercised liberally in favor of a rehearing.    We think that under this decision the petitioners are entitled to be heard on their petition, and that the motion to dismiss should be overruled.    And see Pub. Stat. R. I. cap. 192, § 7, 4th clause; Digest of A. D. 1844, pp. 91, 92.

*Order accordingly.*

The petition for a rehearing was heard December 31, A. D. 1887, before the chief justice and the four associate justices.

The facts involved are given in 15 R. I. p. 205 *sq.*

*James Tillinghast*, for petitioners Gustavus Taylor and John D. W. Taylor.

John Taylor died June 30, 1859, leaving a will by which he devised all his real estate to his wife for life.    She survived him and died May 10, 1867.    The third clause of the will is as follows:

" *Item.*    I give and bequeath, after the decease of my said wife, unto my son William Henry Taylor and his heirs, one fifth part of my said real estate; unto my said daughter and her heirs, one

fifth part of my said real estate ; unto my said son William Henry, in trust to and for the use and benefit of my son Gustavus Taylor and his heirs, one fifth part of my said real estate ; unto my said son William Henry, for the use and benefit of my son Alexander Viets Griswold Taylor and his heirs, one fifth part of my said real estate ; and unto my son John DeWitt Taylor and his heirs, one fifth part of my said real estate ; *with power* unto my said son William Henry to appoint a successor, by will or otherwise, for the support of said trust, or to convey unto the said Gustavus or his heirs, or to the said Alexander or his heirs, one fifth part of said estate when he may think proper."

Alexander, the son, died intestate November 5, 1875, leaving a minor child, Alexander V. G. Taylor, Jun., then but between four and five years old, and a widow, the defendant Martha O. Taylor, the mother of this child.

After his brother Alexander's death, William, describing himself as " *Trustee of Alexander V. G. Taylor under the will of John Taylor deceased*," executed to his nephew said Alexander, Jun., a deed, in the form of a quitclaim deed, bearing date February 7, 1876, reciting a nominal consideration of one dollar " paid by Alexander V. G. Taylor, son of Alexander V. G. Taylor, of Providence," of all his " *right, title, and interest, as trustee as aforesaid*," in and to the estate here in question, particularly describing it.

We assume, for the purpose of the present argument, that this deed was properly made and delivered to the child ; although it is very evident that the child, then under five years of age, was entirely incapable of either assenting to or dissenting from it.

As said by Lord Alvanley, in *Philips* v. *Brydges*, 3 Ves. Jun. 120, 127, " No act of the trustee can prejudice or narrow the title of the *cestui que trust.*"   Or, as he quotes himself in *Selby* v. *Alston*, 3 Ves. Jun. 339, 341, " No act of the trustee can in any degree vary the right of the *cestui que trust.*"

And can there be a doubt that Alexander, Jun., had he lived to attain age, could have disaffirmed this deed from his uncle ? And if so, may not his heirs and legal representatives ?  Certainly that is the general principle.

Alexander, Jun., died May 27, 1882, leaving surviving his

mother as his immediate next of kin, and his uncles, said Gusta-
vus, William, and John, and his aunt, said Mary, who are his next
of kin of the blood, not only of his father, but also of his grand-
father the testator, and of his uncle William, the trustee.

His aunt Mary afterwards died, January 18, 1883, leaving a
will dated March 7, 1871, by which she gave all the residue of
her estate to her brothers, said Gustavus and John; but as this
will does not make any reference to after acquired estate, it did
not probably pass any interest in this estate which she took from
her nephew, said Alexander, Jun.

The question now is, to whom did this one fifth of the estate
descend from said Alexander, Jun.? To his mother as his im-
mediate next of kin, regarding him as a *new stock of descent in
his own blood*, or to his uncles and aunt as his next of kin of the
blood of his father, grandfather, and uncle William?

It is submitted in their behalf that it descended to the latter.

I. This will was before the court as to Gustavus's one fifth
of the estate at the October Term, 1868, in *Taylor* v. *Taylor*,
9 R. I. 119; and the court there held that the legal title of that
fifth part was in William H. as trustee, whether in fee or for life
was not then mooted, but that he was "not charged with any ac-
tive trust or duty in the management or disposition of the estate
which calls for a retention of the legal title;" and that the *cestui
que trust* had the full equitable estate, and was entitled, *against
the objection and refusal of the trustee*, to have the title surren-
dered to him whenever he chose to call for it.

The law of descent of Rhode Island since 1798 [1] discards en-
tirely the fiction of the English law, that every estate, with a few
exceptions immaterial to the present inquiry, acquired otherwise
than by descent, is an estate by purchase, a *feudum antiquum*,
creating its holder a new stock of descent in his own blood; and
provides in effect that only estates acquired *for value*, that is, by
purchase in its primary and proper sense, or from a stranger, shall
have this effect, by providing that estates acquired by *gift or de-
vise*, as well as by descent "from the parent *or other kindred*,"
shall descend as ancestral. "Gift" as used in this proviso to the

---

[1] Printed 15 R. I. 205, note.

statute being set in juxtaposition to "devise," evidently includes gifts *inter vivos*, — not merely voluntary conveyances in the strict acceptation of the term as distinguished from involuntary or obligatory; for there can be no doubt that a deed of gift obtained by duress or even fraud, unless avoided and set aside, would control the descent. And this is the sense in which Washburn, 3 Real Property, 3d ed. 305, regards it; for he does not use the word "voluntary" at all, but says: "A conveyance by 'gift' is simply a feoffment, wherein the estate thereby limited or created is one in tail." See, also, to same effect *Hartman's Estate*, 4 Rawle, 39; *Eckert's Estate*, 12 Phila. 93.

This being the evident intent of this proviso, to preserve and continue the estate in the blood from which it was derived, it is submitted that it should not be frittered away by forced analogies under the English doctrine of estates and tenures, resting in great part upon feudal fictions, but should receive a liberal construction to effectuate this intent. And while it is no doubt true, as a general principle, that where the legal and equitable estates, *entirely commensurate with each other, but seldom, if ever, otherwise,* meet in the same person, the equitable will merge in the legal, it may well be doubted whether in such cases as *Goodright* v. *Wells*, Doug. 771, which is the same case as *Selby* v. *Alston*, 3 Ves. 339, and *Nicholson* v. *Halsey*, 1 Johns. Ch. 416, the principle would or should be applied to break the descent under such a statute as ours. Gibson, C. J., in *Hartman's Estate, supra*, unqualifiedly asserts the contrary. But, however this may be, it is submitted that these cases are not at all analogous to the case at bar, for in them the estate *never was stamped with the blood of the ancestor*. He never was actually seized of it. More than this, the legal estate came to the mother in the English case, and to the child in the New York case, clearly as a purchaser, not only under the strict doctrine of the English law, but also under the New York statute, because it came from a stranger, and upon this Kent rested his judgment. The subsequent case *Gardner* v. *Astor*, 3 Johns. Ch. 53, which is sometimes cited as illustrative of the same doctrine, is still more remote. It was not so much a "*merger*," in its proper sense, as an *extinguishment of the incumbrance*, or charge, upon the estate. Nor is *Wade* v. *Paget*,

1 Bro. C. C. 363, analogous to the case at bar. There the legal estate descended to the child from its mother; and the equitable estate there, also, rested in the mother's " *covenant* " only to convert it into an estate by purchase. Nor is Thurlow's statement in *Wade* v. *Paget*, " that it is universally true, that where the estates unite, the equitable must merge in the legal," now recognized as correct. There are many exceptions to it. In fact, as a general principle, they never merge unless commensurate with each other, and not always then. See notes to *Selby* v. *Alston*, 3 Ves. Jun. (Sumner's ed.) 342 ; Watkins on Descents, *147, *149, *173.

Alexander, Jun., by the deed from his uncle, acquired no " *new estate* " in the sense in which Mr. Watkins uses the term. His grandfather had by his will carved out of his own absolute estate two estates : the full equitable estate he gave to his son Alexander, and it was cast by descent from him upon the grandson Alexander, Jun.; the legal he vested in his son William as trustee, to serve this equitable use, " *with power* " to surrender it whenever he thought best. And whenever he did surrender it, it did not put the nephew in as of a " *new estate.*" Compare *Buchanan* v. *Harrison*, 1 Johns. & Hem. 662.

But there is another fact in the circumstances of this case which in this aspect of it is conclusive of it.

The legal title came from the uncle, from the *same blood as the equitable*, by a deed of " *gift*," whether it is to be considered as an independent conveyance by him, or as an execution of the trust power.

For, considering it as passing an independent estate vested in the uncle, it was, I submit, a deed *of gift* under the statute. For treating it as his deed, passing the legal estate *as from him*, it must be considered as though the estate had by his father been devised to him with an expressed wish that he should, whenever he thought it proper to do so, convey it to his brother Alexander or his heirs, but not in such manner as impressing it with a trust in William's hands ; and that he had conveyed in compliance with this expressed wish of his father. And for the present phase of the argument, this deed must be so treated ; for the moment it is treated as resting upon the obligation of the trust, it ceases, as we shall

presently see, to operate as passing any estate from William himself, but as passing the estate as direct from the testator.

II. But aside from this, which may be considered as an accidental relationship of the trustee to the *cestuis* and those claiming under them in this particular case, our claim well rests upon other impregnable grounds of general application in like cases, to which we now ask attention.

So long as *Tillinghast* v. *Coggeshall*, 7 R. I. 383, is recognized as authority, there can be no doubt that the trust in this case is an executed, as distinguished from an executory, trust. That is, in the language of the courts, the testator was "*his own conveyancer*," leaving only discretionary with his son, the trustee, the time when, and possibly the person to whom, that is, whether to his brother Alexander or to his heirs, the surrender, appointment (conveyance, in the language of the will, of the legal title) should be made.

The trust in itself, whatever its proper duration, was the barest trust imaginable within the English Vendors and Purchasers Act of 1874, and the Land Transfer Act of 1875, as defined in *Christie* v. *Ovington*, L. R. 1 Ch. Div. 279–281. And it was clearly a *passive* as distinguished from an *active* trust. Tiedeman on Real Property, §§ 494–514.

But to this trust, whatever it was, was added a "*power*," — so expressly termed in the will itself, and so called and treated, and properly so, in 9 R. I. 127, — a power to the trustee to "*convey*," that is, to *appoint*, the legal estate to the *cestui* whenever he saw fit.

"Every power given in a will is considered in a court of chancery as a trust for the benefit of the person for whose use the power is made, and *as a devise or bequest to that person.*" 2 Washburn Real Property, ed. of 1864, *323; Williams Real Property, 5th ed. *307 to *310.

And upon this principle rest all powers of appointment. For, as said by Lord Hardwicke in *Cooke* v. *Duckenfield*, 2 Atk. 562, 565, " whenever a power is given, whoever takes the estate takes from *the grantor*, by whom the power is created, and not from the power itself."

Or, as the principle is more fully stated by Lord St. Leonards :

" Powers under wills and deeds are both distinguishable from a power to convey an estate under a letter of attorney. The estates raised by the execution of a power, whether it be created by deed or will, *take effect as limited in the instrument creating the power. A devise of an authority* is within the statute of wills, and when the authority is exercised the estates created by it *come in lieu of the authority*." 1 Sugden on Powers, *242; 2 Ib. *23 *sq.*, *31–*33 ; Tiedeman on Real Property, §§ 559, 560 ; *Maundrell* v. *Maundrell*, 10 Ves. Jun. 246, 255 ; *Cholmondeley* v. *Clinton*, 2 Jac. & W. 1, 147 ; *Doolittle* v. *Lewis*, 7 Johns. Ch. 45 ; *Glass* v. *Richardson*, 2 De Gex, M. & G. 658 ; *Withers* v. *Yeadon*, 1 Rich. Eq. 324 ; *Collins* v. *Carlisle's Heirs*, 7 B. Mon. 13, 14 ; *Weston* v. *Weston*, 125 Mass. 268.

Hence these powers may be executed by a married woman. 1 Perry on Trusts, §§ 48, 49 ; *Bradish* v. *Gibbs*, 3 Johns. Ch. 523 ; *Gridley* v. *Wynant*, 23 How. U. S. 500 ; *Gridley* v. *Westbrook*, 23 Ib. 503 ; *Cranston* v. *Crane*, 97 Mass. 459. Or under them one *may convey* directly to his wife or to himself. Williams on Real Property, *300 *et seq.* ; *Hall* v. *Bliss*, 118 Mass. 554, 559 ; *Woonsocket Inst. Savings* v. *Amer. Worsted Co.* 13 R. I. 255.

For example, suppose that this devise had been to William H., precisely in the language of the will, " for the use and benefit of " his (William's) wife and her heirs, . . . " *with power* unto my said son, William Henry, to " . . . " convey unto the said " wife or her heirs " when he may think proper," and William had made a deed directly to his wife : can there be a doubt that it would have vested the absolute legal. estate in her ? But it could only do so because it operated as an appointment of the estate, for as a conveyance of any estate directly from husband to wife it would be void. But what is the difference in principle between that case and the case at bar ?

And the same principle governs as to descents even under the English doctrine of estates by purchase.

Thus, Mr. Watkins, speaking of estates vesting by descent under the rule in Shelley's case, says, p. *159 : " But it seems that if lands be limited to A. for life, and after A.'s decease to such uses as B. shall appoint, and B. appoints to the heirs of A.,

that these estates shall coalesce. For B. being merely an instrument, when he appoints the estate, the appointee *is in from the grantor ; and the estate so appointed arises, has its existence, and takes effect, from the deed by which such power was granted;* which, in the case put, was the same which limited the estate for life to A."

And after other illustrations he adds, *167 : " So, also, as to trusts executed,* or completely declared, and so as to take effect immediately under the deed or will originally creating the trust, with respect to which the same construction prevails as in cases of *legal estates.*" And see 1 Perry on Trusts, §§ 357–359, 377. Compare Durfee, C. J., in *Sprague* v. *Sprague,* 13 R. I. 701, 704, and *Reynolds* v. *Hennessy,* 15 R. I. 513.

Indeed, as said by Ames, C. J., in *Tillinghast* v. *Coggeshall,* 7 R. I. 383, 393 : " A trust ' for B. in fee,' and a trust ' to convey to B. in fee,' cannot be substantially distinguished, since the latter merely expresses what the former implies."

And it is a matter of common knowledge that large amounts of property, not only in England but in this country, indeed many, and particularly family ancestral estates in our own State, have passed and are held upon the faith of just such trusts and powers, which must be disturbed by the new doctrine, that the conveyance, appointment, by the trustee, operates out of *his* estate, and not out of that of the creator of the trust or power. The latter has been the doctrine of the common law from the earliest time. *Tomlinson* v. *Dighton,* 1 P. Wms. 149, illustrates it, in which the argument for the defendant rested upon it, and as to which Sugden says, 1 Sugden on Powers, *191, *192 : " The judgment was founded upon the opinion of the court that the children would be in, *not by virtue of the conveyance,*" which did pass the mother's life estate, " *but by the will,*" and adds, " where a power by will is given through the medium of a devisee to uses, if it should be thought that it operates under the statute, the appointment must receive the same construction as an appointment under a like power created by deed." In fact a trustee is but a devisee to uses, in the sense in which Lord St. Leonards here uses the term.

I submit, therefore, that when William made his deed to Alex-

ander, Jun., in execution of this power, as confessedly he did, it passed the legal estate to Alexander, Jun., as an estate derived directly by devise from his grandfather, and precisely with the same effect as if it had been limited to him by his grandfather's will.

That this deed was an execution of the power there can be no doubt. It expressly refers to the will, and could have no other operation. *Tomlinson* v. *Dighton,* 1 P. Wms. 149; 1 Spence Equity Jur. *549; 2 Perry on Trusts, 511 *c ; Roach* v. *Wadham,* 6 East, 289.

III. But further I submit that the effect of this deed, combined with the will, was to put Alexander, Jun., into the full estate, legal as well as equitable, *by descent. Wood* v. *Skelton,* 6 Sim. 176. Particularly as explained and approved by Wood, V. C., in *Buchanan* v. *Harrison,* 1 Johns. & Hem. 662, 673, where he says : " The decision in that case depends upon the old doctrine that the testator can never by will make the heir take in any other way than by descent whatever would come to him by descent."

" If he can take by descent the law makes him take so." Lord Alvanley in *Selby* v. *Alston,* 3 Ves. Jun. 342; *Phillips* v. *Dashiel,* 1 Har. & J. 478; *Hoover* v. *Gregory,* 10 Yerg. 444; *Ellis* v. *Page,* 7 Cush. 161.

And here Alexander, Jun., when this deed was made to him, took under it precisely the same legal estate that he would have taken by descent, and the equitable, upon the doctrine contended for by Mrs. Taylor, being absorbed in it, he was therefore in by descent from his grandfather.

IV. But there is another view which I submit is also conclusive of this case.

The devise to William is in terms but a life estate; it is without words of limitation; and there are no trusts to enlarge it beyond his life, or, at the most, beyond the life of Alexander, Sen., if he survived him. The powers, both that to appoint a successor and that to surrender the trust, are purely personal to William, and must die with him.

And there was no purpose whatever of the trust to be served beyond the lives of William and Alexander, Sen. If the estate,

therefore, devised to William had been in terms in fee, it would, upon settled principles, have been cut down to this life estate. *A fortiori*, it cannot, by implication, be enlarged to a fee to serve no purpose. 2 Jarman on Wills, 5th Amer. ed. \*291 *et sq.*, \*305, \*306, and notes; 1 Perry on Trusts, § 312; *Heardson* v. *Williamson*, 1 Keen, 33; *Parks* v. *Parks*, 9 Paige, 107; *Dodson* v. *Ball*, 60 Pa. St. 492, 496, 497.

And the remainder vested under the will directly in Alexander in fee. Tiedeman on Real Property, § 564, and cases cited; *Shapland* v. *Smith*, 1 Bro. C. C. 75; *Doe dem. Hallen* v. *Iron-monger*, 3 East, 533; *Doe dem. Compere* v. *Hicks*, 7 Term Rep. 433; *Hawker* v. *Hawker*, 3 B. & A. 537; *Ward* v. *Amory*, 1 Curtis, 419; *Ellis* v. *Page*, 7 Cush. 161, 165.

Indeed, upon any other construction it is doubtful whether both the trust and the power would not be void for perpetuity; for there is no other limit except the line of heirs *ad infinitum*. *Ware* v. *Polhill*, 11 Ves. Jun. 257–283; Gray on Perpetuities, §§ 483, 484.

When, therefore, the legal life estate was surrendered to Alexander, Jun., so far from merging this remainder in itself, it, as the lesser estate, fell into and was merged in this remainder which Alexander, Jun., already held by descent from his father, who held it directly under the will as a remainder, because, being legal, it could not coalesce with his equitable life estate. *Thurston* v. *Thurston*, 6 R. I. 296; *Ward* v. *Amory*, 1 Curtis, 419; *Richardson* v. *Stodder*, 100 Mass. 528; *Moore* v. *Stinson*, 144 Mass. 594.

V. I have thus far considered the case as though the language of the devise, now in question, was the same as that before the court in the former case in 9 R. I. 119; but in fact it is radically different.

In the former case there was a double use: the language was, " *in trust for the use* and benefit of " Gustavus and his heirs; and the court held it to create a trust estate.

But here it is simply a devise unto my son William Henry, " for the use and benefit of my son Alexander Viets Griswold Taylor and his heirs." And it cannot be assumed that this change in language was accidental, nor can the court on such assumption

interpolate words not here.  And although the court in its opinion in the former case classed these devises together, its attention was not then drawn to this difference between them.

And that this language of the devise under consideration, taken by itself, created an executed use, there can be no doubt.  *Nightingale* v. *Hidden*, 7 R. I. 115, 131, 132 ; 2 Jarman on Wills, 5th Amer. ed. *290, *291.

And the mere fact of different expressions in the other devises, or the mere insertion, particularly in a will so inartificially drawn as this, should not, and I submit cannot, be seized upon to convert this estate into an *active* trust.  2 Jarman on Wills, *291 ; Tiedeman on Real Property, §§ 468–470 ; Williams on Real Property, *217 ; *Ward* v. *Amory*, 1 Curtis, 419, 424, 425, and other cases *supra ; Richardson* v. *Stodder*, 100 Mass. 528, and cases cited ; *Warner* v. *Sprigg*, 62 Md. 14 ; *Lynch* v. *Swayne*, 83 Ill. 336 ; *Moore* v. *Stinson*, 144 Mass. 594.

And to hold otherwise is to ignore settled principles of construction in such cases.  For, while undoubtedly to a certain extent the intention of the testator is to be sought by a comparison of the different portions of the whole will, yet the use of technical language cannot be ignored.  *Nightingale* v. *Hidden*, 7 R. I. 120 ; 2 Jarman on Wills, *488, *489 ; 1 Redfield on Wills, 2d ed. *433–*436.

In whatever light the case is viewed, therefore, I submit that the estate descended from Alexander, Jun., to his uncles and aunt as his next of kin of the blood of his father and of his grandfather, and of his uncle William the trustee ; and for the purposes of this case it matters not through which blood they trace.

*Nathan W. Littlefield*, for respondent Martha O. Taylor, *contra*.

*February* 18, 1888.  STINESS, J.  The opinion given in this case at the October Term, A. D. 1885, 15 R. I. 204, 205 *sq.*, rested upon three points :

*First*, that Alexander Taylor, Jun., inherited an equitable estate from his father in the land referred to in the bill.

*Second*, that the conveyance of the legal estate to him was not a gift or devise from the testator, his grandfather, nor a gift from the trustee, his uncle.

*Third*, that the legal title was the controlling title in determining the descent, where the equitable estate had merged in the legal.

The first point is not disputed. As to the second, we must reiterate that Alexander, Jun., took nothing under the will. Certainly not by devise, for the will, in terms, gave him nothing. An equitable fee was given to his father, and this he inherited. He then got the legal estate from the trustee by virtue of his inheritance of the equitable estate, which was a right existing outside and independent of the will. If a stranger had bought the equitable fee of Alexander, Sen., he would equally have been entitled to a conveyance from the trustee. But no one would claim, in such a case, that he took either by devise or gift under the will, or by gift from the trustee. Whether the word " gift," as used in the statute, be taken in a technical or popular sense, it does not cover this case, since Alexander, Jun., took the legal estate independently of the will by virtue of his ownership of the equitable estate, just as a stranger would have done had he become the owner of it. In other words, he acquired the legal estate as a new estate, by purchase. The uncles of Alexander, Jun:, contend, however, that William H. Taylor did not convey an estate by his deed, but only executed a power of appointment under the will, and, hence, that Alexander, Jun., took his estate under the will by virtue of the appointment, and not by purchase under the deed. We do not think this is so. The will contained no limitation of an estate in favor of Alexander, Jun., individually, or as one of a class, so as to leave to the trustee either a direction or discretion when to convey. If it had, undoubtedly the grantee in a deed from the trustee would take under the will by virtue of the limitation in his favor. Neither did the will indicate any intention to give a mere power of appointment. The trustee had no power of selection outside of the ownership of the equitable estate. The estate was devised to him in trust to hold, and in his discretion to convey. This discretion, at most, could only apply to the time and circumstances of the conveyance ; and the decision in *Taylor* v. *Taylor*, 9 R. I. 119, was to this effect. It was also held in that case that the legal estate vested in the trustee, and was not taken out of him by the execution of the uses. We do not think it was

the intention of the will to vest anything less than a fee in the trustee. The separation of the legal and equitable estates, the power to appoint a successor, and the trust to convey, indicate that the trustee was to hold a fee. It is implied that the trustee, under a will, takes a legal estate sufficient for the purposes of the trust, whether the limitation be to him and his heirs or not. Perry on Trusts, § 312, and cases cited. Moreover, this point was made in the case of *Taylor* v. *Taylor*, *supra*, where it seems to have been assumed, without the necessity of decision, that the legal estate was a fee. The trustee, then, had a legal estate, commensurate with and attendant upon the equitable estate. When the equitable estate was in a person *sui juris*, he could demand the legal estate of the trustee, as in *Taylor* v. *Taylor*, *supra*. The conveyance of the trustee, therefore, was not an execution of a power, operating out of the estate of the testator, but a conveyance of the estate in execution of a trust. If, then, Alexander, Jun., inheriting the equitable estate from his father, received the legal estate on that consideration and in execution of the trust, he became the owner of the entire estate neither by gift nor devise from the testator, nor by gift from the uncle. Upon the union of the two estates in him, the equitable by inheritance and thus ancestral, the legal by purchase and thus in him as a new stock of descent, the question comes, whether the descent is to follow the equitable or the legal title.

It is to be observed that the two estates did not come from the same person. Alexander, Sen., never had the legal title; but if anything could have descended from John Taylor it must have gone to him, for Alexander, Jun., was not the heir of his grandfather. Hence the rule followed in *Wood* v. *Skelton*, 6 Sim. 176, and in *Buchanan* v. *Harrison*, 1 Johns. & H. 662, that an heir will not be held to take by devise what he would have taken by inheritance, does not apply. In this case the two titles come from distinct sources. In their devolution by the provisions of the will the ancestral character of the legal estate has not been preserved within the terms of the statute. If the legal estate controls, the descent is to the mother; if the equitable, to the uncles. Upon the authorities cited in the former opinion, no decisions to the contrary having been brought to our attention, we must adhere to the

conclusion that the legal estate controls. The following passage from *Hopkinson* v. *Dumas*, 42 N. H. 296, shows how the notion that the equitable estate should control arises. After citing *Goodright* v. *Wells*, Doug. 771, the court says: "It was there very learnedly argued that, before the statute of uses, the use was considered in most respects as the complete ownership of the land; that the estate of the feoffee was subservient to the *cestui qui use*, and the former could do nothing to defeat the interest of the latter unless by alienation for a valuable consideration without notice; that the statute of uses completed this subserviency by consolidating the legal estate with the use, or by merging the legal estate in the equitable; and that, by analogy to uses thus considered, trust estates had been and should be held to be the solid and substantial ownership of the land, and the trustee the mere instrument of conveyance; that where a party holds by two titles, the law considers him as taking by the best; that the trust estate, being the best, must control the legal estate. But the court held otherwise, deciding that the legal estate was the better title, and that the equitable title was merged the moment the two became united in the same person; that the legal drew after it the equitable estate, and that the latter was lost in the former." Accordingly the court in New Hampshire, following this and the cases cited in our former opinion, applied this rule to a case of dower.

There are *dicta* to the contrary of this rule, but we know of no case which has decided that, upon the union of the legal and equitable estates, the latter controls the descent.

The petition for rehearing is dismissed.

*Decree accordingly.*